IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GANNETT SATELLITE INFORMATION NETWORK,<br><br>   *Plaintiff*,<br> v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>   *Defendant*. | Case No. 22-cv-475-BAH |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.   THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968 AND THE DEATH IN CUSTODY REPORTING ACT ............................................................. 2

II.  PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST .................................. 4

III. THIS CASE .................................................................................................................. 5

LEGAL STANDARDS ....................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.   DEFENDANT CONDUCTED AN ADEQUATE SEARCH FOR DOCUMENTS .......... 6

I.   DEFENDANT PROPERLY INVOKED FOIA EXEMPTION 3 ..................................... 7

   A.   The Crime Control Act's Confidentiality Provision Qualifies As A Withholding Statute Under Exemption 3 .................................................. 8

   B.   The Information Plaintiff Seeks Was 'Furnished Under' Title I Of The Crime Control Act, And Is Therefore Subject To That Title's Confidentiality Provision ................................................................................................ 9

CONCLUSION .................................................................................................................. 12


## TABLE OF AUTHORITIES

**Cases**

*Am. Jewish Congress v. Kreps*,

    574 F.2d 624 (D.C. Cir. 1978) ................................................................................................ 7

*Ass'n of Retired Rail Road Workers v. U.S. Rail Road Retirement Board*,

    830 F.2d 331 (D.C. Cir. 1987) ................................................................................................ 8

*August v. FBI*,

    328 F.3d 697 (D.C. Cir. 2003) ................................................................................................ 9

*Baldridge v. Shapiro*,

    455 U.S. 345 (1982) ................................................................................................................ 6

*Brayton v. Office of U.S. Trade Rep.*,

    641 F.3d 521 (D.C. Cir. 2011) ................................................................................................ 6

*CIA v. Sims*,

    471 U.S. 159 (1985) ................................................................................................................ 6

*Gilliam v. DOJ*,

    128 F. Supp. 3d 134 (D.D.C. 2015) ........................................................................................ 5

*John Doe Agency v. John Doe Corp.*,

    493 U.S. 146 (1989) ........................................................................................................... 5, 6

*Larson v. U.S. Dep't of State*,

    565 F.3d 857 (D.C. Cir. 2009) ................................................................................................ 6

*Mobley v. CIA*,

    924 F. Supp. 2d 24 (D.D.C. 2013) .......................................................................................... 6

*Morley v. CIA*,

    908 F.3d 1108 (D.C. Cir. 2007) .............................................................................................. 6

*Oglesby v. U.S. Dep't of Army*,

    920 F.2d 57 (D.C. Cir. 1990) ............................................................................................... 7

*SafeCard Servs., Inc. v. SEC*,

    926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................... 6

\* *Seymour v. Barabba*,

    559 F.2d 806 (D.C. Cir. 1977) ...................................................................................... 8, 11

*Stephan v. United States*,

    319 U.S. 423 (1943) ........................................................................................................... 12

## **Statutes**

1 U.S.C. § 112 ........................................................................................................................ 12

1 U.S.C. § 204 ........................................................................................................................ 12

5 U.S.C. § 552 ..................................................................................................................... 6, 7

13 U.S.C. § 9 ............................................................................................................................ 8

34 U.S.C. § 10131 .................................................................................................................... 2

34 U.S.C. § 10132 .................................................................................................................. 10

34 U.S.C. § 10231 ............................................................................................................. 3, 11

34 U.S.C. § 60105 ................................................................................................. 3, 4, 10, 11

Pub. L. No. 90-351 ............................................................................................................ 2, 3, 9

Pub. L. No. 96-157 ............................................................................................................ 2, 3, 9

Pub. L. No. 98-473 ............................................................................................................ 2, 3, 9

Pub. L. No. 109-162 ................................................................................................................ 3, 9

**Other Authorities**

Fed. R. Civ. P. 56 ............................................................................................................................. 6

## INTRODUCTION

This Freedom of Information Act ("FOIA") case concerns a FOIA request from Plaintiff Gannett Satellite Information Network, doing business as USA Today, for information submitted to the Department of Justice's Bureau of Justice Statistics concerning deaths in state correctional institutions, under the Death in Custody Reporting Act. That Act requires States that receive federal grant money under Title I of the Omnibus Crime Control and Safe Streets Act of 1968 ("the Crime Control Act") to submit information on deaths in custody. A confidentiality provision in Title I prohibits the disclosure of certain statistical information furnished under that title. Defendant, the U.S. Department of Justice, relied on that confidentiality provision to withhold the requested records under FOIA Exemption 3, which applies to records exempted from disclosure by statute. The information Plaintiff seeks in this case was furnished under Title I of the Crime Control Act, and is thus exempt from disclosure.

Plaintiff challenges that withholding decision, relying on the codified version of the confidentiality provision in the U.S. Code, which substitutes the word "chapter" for the word "title." Because the confidentiality provision is currently codified in a different chapter of the U.S. Code from the provision requiring States to submit the information in question, Plaintiff argues that the confidentiality provision, and thus Exemption 3, does not apply. But Congress did not pass the U.S. Code version of the confidentiality provision, and the limitation that Plaintiff relies on lacks the force of law. Because the version of the confidentiality provision passed by both houses of Congress and signed into law by the President covers all information furnished under Title I of the Crime Control Act, and because Plaintiff seeks precisely such information, Exemption 3 applies, and the challenged withholding was proper. Defendant is therefore entitled to summary judgment.

## BACKGROUND

**I. THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968 AND THE DEATH IN CUSTODY REPORTING ACT**

Congress passed the Crime Control Act "to assist State and local governments in strengthening and improving law enforcement at every level by national assistance," by encouraging State and local governments to create comprehensive plans for dealing with local law enforcement issues, authorizing federal grants to improve State and local law enforcement, and encouraging research into "new methods for the prevention and reduction of crime and the detection and apprehension of criminals." Pub. L. No. 90-351, Title I, 82 Stat. 198 (June 19, 1968).

In Title I of the Crime Control Act, Congress created a new "Law Enforcement Assistance Administration" within the Department of Justice and under the authority of the Attorney General, to administer the various programs created under Title I of the Act. Pub. L. 90-351, Title I, § 101, 82 Stat. 198. It has since been renamed as the Office of Justice Programs, Pub. L. 98-473, Title II, § 603(a), 98 Stat. 2077 (Oct. 12, 1984). Through one of it components, the Bureau of Justice Assistance, the Office of Justice Programs is responsible for administering the Edward Byrne Memorial Justice Assistance Grant program, which is the leading source of federal justice funding to state and local jurisdictions.[1]

Congress amended Title I of the Crime Control Act in the Justice System Improvement Act of 1979, making two changes relevant here. First, it reauthorized the Bureau of Justice Statistics ("BJS"), under the auspices of what is now the Office of Justice Programs, with responsibility for collecting and analyzing information on crime and the criminal justice system. Pub. L. 96-157, Title I, §§ 301-05, 93 Stat. 1176-79 (Dec. 27, 1979) (codified at 34 U.S.C. § 10131

---

[1] *See* https://bja.ojp.gov/program/jag/overview (last visited June 30, 2022).

*et seq.*). Second, Congress inserted a new provision dealing with "confidentiality of information." As subsequently renumbered and amended, that provision now reads:

> No officer or employee of the Federal Government, and no recipient of assistance under the provisions of *this title* shall use or reveal any research or statistical information furnished under *this title* by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with *this title*. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.

Pub. L. 90-351, Title I, § 812(a), *formerly* § 818, *as added* Pub. L. 96-157, § 2, 93 Stat. 1213 (Dec. 27, 1979), *redesignated as* § 812 *by* Pub. L. 98-473, Title II, § 609(f), 98 Stat. 2093 (Oct. 12, 1984), *amended by* Pub. L.109-162, Title XI, § 1115(c), 119 Stat. 3104 (Jan. 5, 2006) (emphasis added). In codifying that provision, the Office of the Law Revision Counsel of the United States House of Representatives substituted the word "chapter" for each instance of the word "title" in the Statutes at Large. *See* 34 U.S.C. § 10231(a). For the convenience of the Court and the parties, the relevant pages of the Statutes at Large are attached as an addendum to this brief.

The Death in Custody Reporting Act ("DCRA"), enacted in 2014, requires States to submit, on a quarterly basis, "information regarding the death of any person who is detained, under arrest, or is in the process of being arrested, is en route to be incarcerated, or is incarcerated" in any "State or local correctional facility." 34 U.S.C. § 60105(a). The information required includes, "at a minimum," "(1) the name, gender, race, ethnicity, and age of the deceased; (2) the date, time, and location of death; (3) the law enforcement agency that detained, arrested, or was in the process of arresting the deceased; and (4) a brief description of the circumstances surrounding the death." *Id.* § 60105(b).

The requirement applies to any "State [that] receives funds" under "subpart 1 of part E of title I of the Omnibus Crime Control and Safe Streets Act of 1968," i.e. "the Edward Byrne

3

Memorial Justice Assistance Grant Program." *Id.* § 60105(a), (c)(2). The penalty for failing to comply with the reporting requirement is that the State "shall, at the discretion of the Attorney General, be subject to not more than a 10 percent reduction of the funds that would otherwise be allocated" under the Byrne Grants program. *Id.* § 60105(c)(2).

## II.     PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST

On April 9, 2021, Plaintiff submitted a FOIA request to the Office of Justice Programs seeking "all information submitted to BJS under the Mortality in Correctional Institutions program," including "information contained in submissions of BJS Forms CJ-9 and CJ-10 and any other data elements states are required to provide under 34 U.S.C. 60105," from 2010 through the date of processing the request. Declaration of Chauntonya Eason ("Eason Decl.") ¶ 6. The request specified that it sought "data on the deaths of individual inmates, not the summaries of inmate deaths published on the BJS website." *Id.* Plaintiff also requested "a copy of any data dictionary, record layout or other documentation that describes elements contained in the electronic database requested above." *Id.*

BJS conducted a search in response to Plaintiff's request, and located 236,568 pages of potentially responsive documents. *Id.* ¶ 8. The Office of Justice Programs' FOIA office determined that because the records contain research or statistical information identifiable to specific private persons, the records were exempt from disclosure under the confidentiality provision of the Crime Control Act, codified at 34 U.S.C. § 10231. *Id.* ¶ 9. The Office of Justice Programs responded to Plaintiff on April 13, 2021, stating that all of the records located by BJS were exempt from disclosure under 34 U.S.C. § 10231 and FOIA Exemption 3. *Id.* ¶ 10.

Plaintiff appealed the withholding decision to the Office of Information Policy ("OIP") on April 14, 2021. *Id.* ¶ 11. OJP subsequently conducted a further search for documents responsive

to the second part of Plaintiff's request and determined that responsive records were publicly available on the website of the National Archive of Criminal Justice Data. *Id.* ¶ 12. On December 3, 2021, OIP made its final determination on Plaintiff's appeal, releasing 71 pages responsive to the second part of the request, and otherwise affirming OJP's withholding of records under Exemption 3. *Id.* ¶ 13.

### III. THIS CASE

Plaintiff filed this case on February 23, 2022, challenging OJP's withholdings as to the first part of the request only. *See* Compl. ¶ 6, ECF 1 at 2. Defendant answered on April 8, 2022, *see* ECF 7, and the parties subsequently jointly moved for a summary judgment briefing schedule limited to the issue of whether the challenged categorical withholding of all potentially responsive documents was proper under Exemption 3, with Defendant reserving the right to assert other exemptions on a document-by-document basis should the Court reject the assertion of Exemption 3. *See* ECF 10. The Court granted that motion by Minute Order on June 1, 2022, and subsequently granted Defendant's unopposed motion for a six-day extension to file this opening brief.

### LEGAL STANDARDS

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency*, 493 U.S. at 152). Thus, the exemptions must be given "meaningful reach and

application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted). The agency bears the burden of justifying the withholding of material responsive to a FOIA request, and a court reviews the agency's response to the request *de novo*. 5 U.S.C. § 552(a)(4)(B).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). This is not a high bar: "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.*; *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agencies' FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims.").

**ARGUMENT**

**I.     DEFENDANT CONDUCTED AN ADEQUATE SEARCH FOR DOCUMENTS**

After receiving a request under FOIA, "an agency's search obligations are dictated by whether the scope of the search is reasonably calculated to uncover relevant documents." *Mobley v. CIA*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C.

6

Cir. 2007)). At the summary judgment stage, a court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

As described in the Eason Declaration, BJS conducted a thorough search that could reasonably be expected to uncover all records responsive to Plaintiff's request. *See* Eason Decl. ¶ 8. Plaintiff's request is phrased broadly, seeking "*all* information submitted to BJS under the Mortality in Correctional Institutions program." *Id.* ¶ 6 (emphasis added). BJS accordingly conducted a broad search of the Mortality in Correctional Institutions databases, including the databases for CJ-9 forms (Death Report on Inmates Under Jail Jurisdiction) and CJ-10 forms (Death Report on Inmates in Private and Multi-Jurisdictional Jails)—both of which are specifically mentioned in the request— and NPS-4A forms (State Prison Inmate Death Report). *Id.* ¶ 8. BJS searched the databases that store information submitted to BJS under the Mortality in Correctional Institutions program, and thus searched all locations reasonably likely to contain responsive records. *Id.*

## II.     DEFENDANT PROPERLY INVOKED FOIA EXEMPTION 3

Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," if that statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Those "two subsections are separate and distinct," and a statute need only satisfy one to authorize withholding under Exemption 3. *Am. Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C. Cir. 1978). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on

the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Ass'n of Retired Rail Road Workers v. U.S. Rail Road Retirement Board*, 830 F.2d 331, 336 (D.C. Cir. 1987).

### A. The Crime Control Act's Confidentiality Provision Qualifies As A Withholding Statute Under Exemption 3.

The Crime Control Act's confidentiality provision satisfies both subsections of Exemption 3, because it both requires withholding in a manner that leaves no discretion and refers to particular types of matters to be withheld. Although no court has yet analyzed that provision under Exemption 3, both the D.C. Circuit and the Supreme Court have held that nearly identical language in the Census Act does satisfy Exemption 3.

The Census Act provides that "[n]either the Secretary [of Commerce] nor any other officer . . . may, except as provided in [certain other specified statutory provisions] use the information furnished under the provisions of this Title for any purpose other than the statistical purposes for which it is supplied." 13 U.S.C. § 9(a)(1). The D.C. Circuit held "that this statute is a clear and strongly worded prohibition against disclosure which would qualify under Exemption 3." *Seymour v. Barabba*, 559 F.2d 806, 807-08 (D.C. Cir. 1977). It satisfied the first subsection because "[i]t is a flat barrier to disclosure with no exercise of discretion permitted." *Id.* at 808. And it satisfied the second subsection because "[i]t refers to the particular type of matter to be withheld, using rather all-embracing language for the description to be sure, but emphatically including 'the information furnished under the provisions of this Title' and forbidding its use 'for any purpose other than the statistical purposes for which it is supplied.'" *Id.* The Supreme Court likewise concluded that that provision "qualif[ies] as [a] withholding statute[] under Exemption 3," because "[n]o discretion is provided to the Census Bureau on whether or not to disclose the information

referred to" in that provision, and because it identified the "raw data reported by or on behalf of individuals" as the type of matter "to be held confidential and not available for disclosure." *Baldridge v. Shapiro*, 455 U.S. 345, 355 (1982).

The confidentiality provision at issue here is at least as protective as the Census Act. Like the Census Act provision, it flatly prohibits the use of "any research or statistical information furnished under this title by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this title." Pub. L. 90-351, Title I, § 812(a), *formerly* § 818, *as added* Pub. L. 96-157, § 2, 93 Stat. 1213 (Dec. 27, 1979), *redesignated as* § 812 *by* Pub. L. 98-473, Title II, § 609(f), 98 Stat. 2093 (Oct. 12, 1984), *amended by* Pub. L.109-162, Title XI, § 1115(c), 119 Stat. 3104 (Jan. 5, 2006). That language, like the same language in the Census Act, leaves no discretion over disclosure, and specifically identifies the matter to be withheld, and therefore satisfies Exemption 3. But the confidentiality provision here is even more clearly a prohibition on disclosure, because it provides that no government employee may "use *or reveal*," not just "use," information subject to the provision. *Id.* (emphasis added); *see supra*, p. 3.

### B. The Information Plaintiff Seeks Was 'Furnished Under' Title I Of The Crime Control Act, And Is Therefore Subject To That Title's Confidentiality Provision.

Plaintiff's FOIA request leaves no doubt that it seeks information that is "identifiable to any specific private person." *See* Eason Decl. ¶ 6 ("'To be clear, I am requesting data on the deaths of individual inmates, not the summaries of inmate deaths published on the BJS website.'") (quoting Plaintiff's FOIA request). Nor is there any doubt that Plaintiff's purpose in seeking that information is not the purpose specified in the DCRA, namely facilitating a "study" by "[t]he Attorney General," to "determine means by which such information can be used to reduce the number of such deaths" and "examine the relationship, if any, between the number of such deaths

9

and the actions of management of such jails, prisons, and other specified facilities relating to such deaths." 34 U.S.C. § 60105(f).  For the same reason, the information Plaintiff seeks necessarily qualifies as "research or statistical information" for purposes of the confidentiality provision: *all* information submitted pursuant to DCRA is "research information" gathered for the purpose of facilitating research into deaths in custody.  *Id.*; *see also* Eason Decl. ¶ 8 (BJS determined that the responsive records contain research or statistical information identifiable to specific persons).  The same is true of any information that may have been submitted to BJS under the Mortality in Correctional Institutions program outside the auspices of the DCRA:  Congress specified that the function of BJS is to "collect and analyze" "data" and "statistical information" relating to the criminal justice system, *see* 34 U.S.C. § 10132(c), and the Mortality in Correctional Institutions program was expressly limited to "collect[ing] data for statistical purposes only."[2]

      The applicability of Exemption 3 thus turns entirely on whether the information Plaintiff seeks was "furnished under this title," i.e. Title I of the Crime Control Act.  The answer to this question is likewise not in doubt:  Plaintiff seeks information furnished to a Title I entity, the Bureau of Justice Statistics, *see* Eason Decl. ¶ 6, which States are required to furnish only by virtue of their voluntary participation in a Title I program, the Edward Byrne Memorial Justice Assistance Grant program, subject to potential, discretionary enforcement in the form of loss of funds that are awarded under that Title I program, *see* 34 U.S.C. § 60105(a), (c)(2).  A State that does not participate in that Title I program, which is administered by the Bureau of Justice Assistance (also a Title I entity), has no obligation whatsoever to furnish any information under DCRA.  Whatever

---

[2] *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program (last visited June 30, 2022).

DCRA information is furnished by States is furnished solely through and because of Title I, with which DCRA is necessarily and inextricably intertwined.

The D.C. Circuit's Census Act decision is again instructive on this point. There, the plaintiff argued that the information it sought was not "furnished under the provisions of this Title" because the information may have been "acquired or supplied from sources other than the specified reporting establishments" under the Census Act. *Seymour*, 559 F.2d at 808. The court rejected that argument, instead interpreting the word "furnished" broadly to mean "'gathered' for ultimate statistical purposes." *Id.* at 809. For Exemption 3 purposes, it was thus sufficient that the data sought were "gathered by the Census Bureau" and "categorized and assembled for Census Bureau purposes." *Id.* at 808. The same is true here: The information Plaintiff seeks was gathered by BJS, and categorized and assembled for that office's purposes, and thus qualifies as having been "furnished" under Title I.

In its complaint, Plaintiff refers to that the confidentiality provision, as codified in the U.S. Code, at 34 U.S.C. § 10231, which states, "No officer or employee of the Federal Government, and no recipient of assistance under the provisions of this chapter shall use or reveal any research or statistical information *furnished under this chapter* by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this chapter." Compl. ¶ 12, ECF 1 at 3. Plaintiff then argues that the records it requested "are furnished under 34 U.S.C. § 60105 (Title 34, Subtitle IV, Chapter 601) and not furnished under 34 U.S.C. § 10231 (Title 34, Subtitle I, Chapter 101). *Id*. ¶ 13.

The U.S. Code, however, is only a "consolidation and codification" of the laws "prepared by the Office of the Law Revision Counsel of the United States House of Representatives."[3]

---

[3] *See* https://uscode.house.gov/ (last visited June 30, 2022).

11

Unless enacted as positive law, titles of the U.S. Code are merely "prima facie" evidence of the law. 1 U.S.C. § 204(a). The Statutes at Large, in contrast, constitute "legal evidence of laws." 1 U.S.C. § 112. That distinction means "that the Code cannot prevail over the Statutes at Large when the two are inconsistent." *Stephan v. United States*, 319 U.S. 423, 426 (1943). Congress has not enacted Title 34 as positive law, so the prevailing version of the confidentiality provisions applies to information "furnished under this title," as the Statutes at Large have it, not to information "furnished under this chapter," per the U.S. Code version modified by the Office of the Law Revision Counsel.

Accordingly, the challenged records were properly withheld in full under the Crime Control Act's confidentiality provision and FOIA's Exemption 3.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendant on all of Plaintiff's claims.

Dated: June 30, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Cormac A. Early*
CORMAC A. EARLY
D.C. Bar No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

*Counsel for Defendants*