# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GANNETT SATELLITE INFORMATION NETWORK,

    *Plaintiff*,

  v.

U.S. DEPARTMENT OF JUSTICE,

    *Defendant*.

Case No. 22-cv-475-BAH

## PARTIAL MOTION FOR RECONSIDERATION OF
## <u>PARTIAL SUMMARY JUDGMENT WITH RESPECT TO EXEMPTION 3</u>
## <u>AND FOR A PARTIAL STAY OF PRODUCTION</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

    A.    DCRA and the MCI Program ...............................................................1

    B.    Plaintiff's FOIA Request and This Litigation.........................................6

ARGUMENT ...................................................................................................... 7

I.    STANDARD OF REVIEW ..........................................................................9

II.    RECONSIDERATION IS APPROPRIATE WITH RESPECT TO THE MCI DATA PLAINTIFF SEEKS THAT BJS COLLETED WHEN DCRA 2013 WAS NOT IN EFFECT OR THAT DCRA 2013 DID NOT REQUIRE TO BE REPORTED ...............11

III.    RECONSIDERATION IS WARRANTED TO AVOID SUBSTANTIAL HARM TO BJS ...............................................................................................13

IV.    A STAY OF DEFENDANT'S OBLIGATION TO PRODUCE THE RECORDS SUBJECT TO THIS RECONSIDERATION MOTION IS WARRANTED TO AVOID MOOTING THE ISSUE BEFORE THE COURT RENDERS A DECISION ...14

CONCLUSION.................................................................................................. 15

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alaska v. FERC,*

    980 F.3d 761 (D.C. Cir. 1992) ...................................................................... 9

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,*

    630 F.3d 217 (D.C. Cir. 2011) ...................................................................... 9

*Center for Nat'l Security Studies v. U.S. Dep't of Justice,*

    217 F. Supp. 2d 58 (D.D.C. 2002) ............................................................. 14

*Chacoty v. Pompeo,*

    392 F. Supp. 3d 1 (D.D.C. 2019) ............................................................... 12

*Chien Fan Chu v. Brownell,*

    247 F.2d 790 (D.C. Cir. 1957) .................................................................... 12

*Cobell v. Norton,*

    224 F.R.D. 266 (D.D.C. 2004) .................................................................... 10

*Cobell v. Norton,*

    355 F. Supp. 2d 531 (D.D.C. 2005) ............................................................. 9

*Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran,*

    772 F. Supp. 2d 218 (D.D.C. 2011) ........................................................... 10

*Greene v. Union Mut. Life Ins. Co. of Am.,*

    764 F.2d 19 (1st Cir. 1985) .......................................................................... 9

*John Doe Agency v. John Doe Corp.,*

    488 U.S. 1306 (1998) .................................................................................. 15

*Judicial Watch v. U.S. Dep't of Army,*

    466 F. Supp. 2d 112 (D.D.C. 2006) ........................................................... 10

*Langevine v. District of Columbia,*

106 F.3d 1018 (D.C. Cir. 1997) ................................................................................... 9

*Liberty Mut. Ins. Co. v. Wetzel,*

424 U.S. 737 (1976) .................................................................................................... 9

*Moore v. Hartman,*

332 F. Supp. 2d 252 (D.D.C. 2004) ........................................................................... 10

*Nken v. Holder,*

556 U.S. 418 (2009) .................................................................................................... 14

*Rosenberg v. U.S. Dep't of Defense,*

442 F. Supp. 3d 240 (D.D.C. 2020) ........................................................................... 10

*Shapiro v. U.S. Dep't of Justice,*

No. 13-cv-555-RDM, 2016 WL 30123980 (D.D.C. May 25, 2016) ........................ 14

*Singh v. George Washington Univ.,*

383 F. Supp. 2d 99 (D.D.C. 2005) ............................................................................. 10

*United States v. All Assets Held at Bank Julius Baer & Co. Ltd.,*

308 F. Supp. 3d 186 (D.D.C. 2019) ........................................................................... 10

**<u>Statutes</u>**

Death in Custody Reporting Act 2000, Pub. L. 106-297, 114 Stat. 1045 (Oct. 13, 2000) ............. 1

Death in Custody Reporting Act 2013, Pub. L. 113-242, 128 Stat. 2860 (Dec. 18, 2014) ............ 5

5 U.S.C. § 552 .............................................................................................................................. 5

18 U.S.C. § 4001 note .................................................................................................................. 6

31 U.S.C. § 1102 .......................................................................................................................... 5

34 U.S.C. § 10132 ............................................................................................................... 3, 4, 11

34 U.S.C. § 10134 ................................................................................................ 5

34 U.S.C. § 10231 ................................................................................................ 7

34 U.S.C. § 10251 .............................................................................................. 12

34 U.S.C. § 12104 ......................................................................................... 2, 12

34 U.S.C. § 60105 ......................................................................................... 5, 12

42 U.S.C. § 13704 (2000) ............................................................................. 2, 12

44 U.S.C. § 3571 ............................................................................................... 14

**Rules**

Fed. R. Civ. P. 54 ................................................................................................ 7

**Other Authorities**

H.R. Rep. No. 113-285 (2013) ........................................................................... 2

Report of the Attorney General Pursuant to Section 6(e) of Executive Order 14074: Department

    of Justice Implementation of the Death in Custody Reporting Act of 2013 ....... 2, 3, 5, 6, 11, 12

Bureau of Justice Statistics, Corrections .......................................................... 4

Bureau of Justice Statistics, Data Protection Guidelines ............................... 13

Bureau of Justice Statistics, Federal Law Enforcement Agency Deaths in Custody Reporting

    Program .......................................................................................................... 6

Bureau of Justice Statistics, MCI Program (Formerly Deaths in Custody Reporting Program

    (DCRP)) ...................................................................................................... 2, 3

Bureau of Justice Statistics, National Corrections Reporting Program ......................................... 4

Bureau of Justice Statistics, National Prisoner Statistics Program ................................. 4

Bureau of Justice Statistics, Prisoners in 2021, Statistical Tables ................................. 4

Bureau of Justice Statistics, Prisoners in State and Federal Institutions on December 31, 1978, NCJ-64671 ................................................................................................................. 3, 4

Office of Management and Budget, Statistical Policy Directive 1: Fundamental Responsibilities of Federal Statistical Agencies and Recognized Statistical Units, 79 Fed. Reg. 71,610 (Dec. 2, 2014) ................................................................................................................................ 5

## INTRODUCTION

Defendant respectfully requests that the Court reconsider its Order denying Defendant's Motion for Summary Judgment and granting Plaintiff's Cross-Motion for Summary Judgment (ECF 20) and clarify that it does not apply to any records submitted to the Bureau of Justice Statistics ("BJS") between 2010 (the beginning of the timeframe specified in Plaintiff's FOIA request) and the effective date of the Death in Custody Reporting Act of 2013 ("DCRA 2013"), and to any records submitted to BJS by local, as opposed to state, agencies. There was no DCRA in effect between 2010 and the effective date of DCRA 2013, as the Court recognized in its decision. Any records submitted to BJS during that timeframe could not, therefore, have been collected pursuant to DCRA, for purposes of the Exemption 3 analysis the Court conducted. Similarly, neither the old nor the new version of DCRA required local agencies to submit information to Defendant, so any information submitted to BJS by local agencies was also not collected pursuant to DCRA.

Defendant also respectfully requests that the Court stay its obligation to produce the records subject to this reconsideration motion pending resolution of the motion. Pursuant to the agreement of the parties, *see* ECF 26, Defendant is due to complete processing of all responsive records by October 26, 2023, for potential production.

Defendant conferred with counsel for Plaintiff regarding this motion, and counsel stated that Plaintiff opposes all relief sought in this motion.

## BACKGROUND

### A.     DCRA and the MCI Program

As first enacted in 2000, the Death in Custody Reporting Act ("DCRA 2000"), Pub. L. 106-297, 114 Stat. 1045 (Oct. 13, 2000), required states, to be eligible for certain federal law-enforcement grants, to "provide[] assurances that [they would] follow guidelines established by

the Attorney General in reporting, on a quarterly basis, information regarding the death of any person who is in the process of arrest, is en route to be incarcerated, or is incarcerated at a municipal or county jail, State prison, or other local or State correctional facility." 42 U.S.C. § 13704(a)(2) (2000) (current version at 34 U.S.C. § 12104).[1] DCRA 2000 did not apply to federal agencies, and it did not require local authorities to report directly to DOJ. *Id.* BJS launched the Mortality in Correctional Institutions ("MCI") program, formerly known as the Deaths in Custody Reporting Program, following the passage of DCRA 2000. *See* Report of the Attorney General Pursuant to Section 6(e) of Executive Order 14074: Department of Justice Implementation of the Death in Custody Reporting Act of 2013, at 2 ("AG Report").[2] MCI collected data on deaths in custody consistent with DCRA 2000 but also more broadly. MCI collected data directly from "each of the nation's 50 state prison systems, Federal Bureau of Prisons, and approximately 2,800 local jail jurisdictions," whereas DCRA 2000 only required reporting by states. BJS, MCI Program (Formerly Deaths in Custody Reporting Program (DCRP)).[3]

DCRA 2000 "expired in 2006," *id.*, after which time, as this Court has noted, "no DCRA authority existed, before the reauthorization of the DCRA in 2014," ECF 21 at 20 n.3. BJS nevertheless "decided that mortality of individuals within the criminal justice system was of great

---

[1] DCRA 2000 was enacted as amendment to the program statute that authorized the making of Violent Offender Incarceration ("VOI") and Truth-in-Sentencing ("TIS") grant awards. Specifically, DCRA 2000 added eligibility requirements for States that sought to receive TIS awards. *See* 34 U.S.C. § 12104(a)(2). When the VOI/TIS program authorization expired, DCRA 2000 expired along with it. *See, e.g.*, H.R. Rep. No. 113-285, at 1-4 (2013) (report on the bill that ultimately became DCRA of 2013, stating that the bill "reauthorizes the Death in Custody Reporting Act of 2000 which expired in 2006.").

[2] Available at https://bja.ojp.gov/doc/DOJ-Implementation-of-DCRA-of-2013.pdf (last accessed September 29, 2023).

[3] Available at https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program (last accessed September 29, 2023).

importance and made MCI one of its standard annual data collections on correctional institutions."
AG Report at 2. Although DCRA 2000's expiration meant that there was no statutory mandate
requiring the submission of death-in-custody information, BJS's organic statute—part of Title I of
the Crime Control Act, *see* Pub. L. 96-157, Title I, §§ 301-05, 93 Stat. 1176-79 (Dec. 27, 1979)—
allows it to collect information about all aspects of the criminal justice system on a voluntary basis.
*See* 34 U.S.C. § 10132(c)(4) (BJS "is authorized to . . . collect and analyze statistical information,
concerning the operations of the criminal justice system at the Federal, State, tribal, and local
levels"). After DCRA 2000 expired, BJS continued independently to determine the details of the
MCI data collection, such as the timeframe for reporting and the information requested. For
example, starting in 2007, BJS gave respondents "the option to report throughout the collection
year as death investigations are finalized" rather than on a quarterly basis as had previously been
required under DCRA 2000. *See* BJS, MCI Program (Formerly Deaths in Custody Reporting
Program (DCRP)), Changes Over Time.[4] BJS also "changed and added several items on the data
collection forms after receiving feedback from the field," and "dropped the item asking for legal
status because nearly all prisoners are convicted at the time of death." *Id.*

BJS's decision to continue MCI as a voluntary data collection after 2006 was consistent
with a long history of collecting such data on a voluntary basis. Since its establishment over forty
years ago, BJS has collected statistics regarding deaths in state and federal prisons. *See, e.g.*, BJS,
*Prisoners in State and Federal Institutions on December 31, 1978*, NCJ-64671, May 1980 ("1978
State and Federal Survey").[5] BJS generally undertook those data collections based on voluntary

[4] *Available at* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-
deaths-custody-reporting-program#changes-over-time-0 (last accessed September 29, 2023).

[5] Available at https://bjs.ojp.gov/content/pub/pdf/psfi78.pdf (last accessed September 29, 2023).

reporting, also pursuant to its statutory authority under Title I of the Crime Control Act to "compile, collate, analyze, publish, and disseminate uniform national statistics concerning all aspects of criminal justice." 34 U.S.C. § 10132(c)(7); *see also, e.g.*, 1978 State and Federal Survey, Preface at iii (statistics "based on voluntary reporting").

More generally, BJS "maintains over 30 corrections-related data collections" on aspects of corrections ranging from "basic population counts and offender demographic characteristics to facility capacity, programs, staff, and resources." BJS, Corrections.[6] For those collections, "[a]ll data collection is voluntary." *Id.*, Why Does Data Take So Long to Collection and Publish. The National Prisoner Statistics ("NPS") Program, for example, "[p]roduces annual national- and state-level data on the number of prisoners in state and federal prison facilities." BJS, National Prisoner Statistics Program.[7] "BJS depends on voluntary participation" by state departments of corrections and the federal Bureau of Prisons for NPS data. BJS, Prisoners in 2021 – Statistical Tables, at 44.[8] Likewise, the National Corrections Reporting Program "collects offender-level administrative data," including demographic information, conviction offenses, sentence length, and time served. BJS, National Corrections Reporting Program.[9] Because participation in that program is voluntary, "the number of states submitting data . . . has varied over the years, but at least 38 states have provided some data since 2000." *Id.*

---

[6] Available at https://bjs.ojp.gov/topics/corrections (last accessed September 29, 2023).

[7] Available at https://bjs.ojp.gov/data-collection/national-prisoner-statistics-nps-program (last accessed September 29, 2023).

[8] Available at https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/p21st.pdf (last accessed September 29, 2023).

[9] Available at https://bjs.ojp.gov/data-collection/national-corrections-reporting-program-ncrp (last accessed September 29, 2023).

Congress reenacted DCRA, with certain modifications, in 2014. Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, 128 Stat. 2860 ("DCRA 2013"). DCRA 2013, however, did not take effect immediately upon enactment. Instead, its requirement for states to report death-in-custody information started in the "fiscal year after the expiration of the period specified in subsection (c)(1)." 34 U.S.C. § 60105(a). Subsection (c)(1), in turn, specifies a period ending "120 days from December 18, 2014," *i.e.*, April 17, 2015. *Id.* § 60105(c)(1). The federal fiscal year "begins on October 1 of each year and ends on September 30 of the following year." 31 U.S.C. § 1102. Accordingly, DCRA 2013's reporting requirement did not kick in until October 1, 2015.

One crucial difference between DCRA 2000 and DCRA 2013 was the creation of a penalty for states that fail to comply with DCRA 2013's reporting requirements, in the form of a potential loss of federal law-enforcement grant funds. *See* 34 U.S.C. § 60105(c)(2). As a result of that change, DOJ determined that BJS was not the appropriate component to collect state information under DCRA 2013, because "the additional [Justice Assistance Grant] enforcement and reporting compliance requirements under DCRA of 2013 are incompatible with BJS's authorizing statute as a federal statistical agency." AG Report at 4.[10] To comply with DCRA 2013, DOJ thus established

---

[10] BJS's authorizing statute provides that "data collected by the Bureau shall be used only for statistical or research purposes and shall be gathered in a manner that precludes their use for law enforcement or any purpose relating to a private person or public agency other than statistical or research purposes." 34 U.S.C. § 10134. Participating in DCRA's enforcement and reporting compliance requirements would also conflict with directives from the Office of Management and Budget ("OMB") that BJS "must function in an environment that is clearly separate and autonomous from the other administrative, regulatory, law enforcement, or policy-making activities" of DOJ. OMB, Statistical Policy Directive No. 1: Fundamental Responsibilities of Federal Statistical Agencies and Recognized Statistical Units, 79 Fed. Reg. 71,610 71,615 (Dec. 2, 2014).

The limitations arising from BJS's role as a statistical agency are "specific to reporting by states" because of DCRA 2013's enforcement mechanism through potential loss of federal grant money, but "BJS is able to receive reports by federal agencies because they are for statistical and

a new DCRA data collection under the Bureau of Justice Assistance ("BJA"), the DOJ component responsible for Justice Assistance Grants, rather than BJS. *See id.* at 5. BJA began collecting data on reportable deaths on October 1, 2019. *Id.* BJA collects DCRA data only from the state agencies responsible for administering federal criminal-justice grants, whereas BJS collected MCI data directly from both state corrections departments and local jails. *See id.* at 8.

The MCI program continued collecting data, including voluntary data collection from local jails, "until the end of calendar year 2019, when the MCI program was discontinued to prevent duplication with state reporting as required by DCRA of 2013." *Id.* at 3-4.

### B.   Plaintiff's FOIA Request and This Litigation

Plaintiff's FOIA request, submitted on April 9, 2021, sought, in relevant part, "all information submitted to BJS under the Mortality in Correctional Institutions program," from 2010 to the date the request was processed. Def.'s Statement of Material Facts as to Which There is No Genuine Issue ¶ 1, ECF 12-3; Pl.'s Statement of Undisputed Material Facts ¶ 1, ECF 13-3.

The Office of Justice Programs ("OJP"), a component of the Department of Justice containing BJS, conducted a search in response to Plaintiff's request which yielded 236,568 pages of potentially responsive documents. *See* Def.'s Statement of Facts ¶ 2; Pl's Statement of Facts ¶ 2. OJP withheld those records in full under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), on the grounds that the confidentiality provision of Title I of the Crime Control Act protected all

---

research purposes only and unrelated to program administration or compliance requirements." AG Report at 6 n.13. DCRA 2013, unlike DCRA 2000, included a reporting requirement for federal law enforcement agencies. *See* 18 U.S.C. § 4001 note. For federal information under DCRA 2013, BJS created the "Federal Law Enforcement Agency Deaths in Custody Reporting Program" ("FDCRP"), which covers arrest-related deaths and deaths in custody information from federal law-enforcement agencies from federal fiscal year 2016 onwards. *See* BJS, FDCRP, *available at* https://bjs.ojp.gov/data-collection/federal-law-enforcement-agency-deaths-custody-reporting-program-fdcrp (last accessed September 29, 2023). However, that collection is distinct from the MCI data collection specified in Plaintiffs' FOIA request, and thus is not at issue in this case.

responsive records from disclosure. Def.'s Statement of Facts ¶ 4; Pl.'s Statement of Facts ¶ 2. That provision prohibits the release of statistical information identifiable to specific persons "furnished under" Title I of the Crime Control Act. ECF 21 at 1; Crime Control Act ¶ 818(a), 93 Stat. at 1213 (codified at 34 U.S.C. § 10231).

Pursuant to an agreement of the parties, *see* ECF 10, the Court permitted cross-motions for summary judgment limited to the question of whether Defendant properly withheld all potentially responsive documents under FOIA Exemption 3, with Defendant permitted to subsequently assert other applicable exemptions on a document-by-document basis in the event that the Court concluded that Exemption 3 does not apply, *see* Minute Order, June 1, 2022. Following the parties' cross-motions, *see generally* ECF 12, 13, 17, 19, the Court denied Defendant's motion and granted Plaintiff's motion, concluding that the requested data was "gathered pursuant to the Death in Custody Reporting Act," and thus not "furnished under" Title I within the meaning of that Title's confidentiality provision, ECF 21 at 21.

In a footnote, the Court pointed out that "[b]oth parties acknowledge that the DCRA was originally enacted in 2000 . . . but that statute expired in December 2006," and that "plaintiff's FOIA request includes information collected by DOJ from 2010 to 2014—a period of time when no DCRA authority existed, before the reauthorization of DCRA in 2014." *Id.* at 20 n.3. Nevertheless, the Court concluded that "[n]either party raises that plaintiff requests information during a time when no DCRA reporting requirement was in effect, and therefore, the Court will not address that point either." *Id.*

## ARGUMENT

As the Court recognized, "the dispositive question" for purposes of the applicability of Exemption 3 here is whether the data Plaintiff requested (*i.e.*, data collected by BJS under the MCI

program) were "furnished under" Title I of the Crime Control Act, and thus covered by that Title's confidentiality provision. ECF 21 at 9-10.

This Court's partial summary judgment Opinion took as its premise that the data Plaintiff requested "is collected by a DOJ component in compliance with the Death in Custody Reporting Act of 2013," ECF 21 at 1, and concluded that "the confidentiality provision in Title I of the Crime Control Act plainly does not exempt release of information 'furnished under' or gathered pursuant to the Death in Custody Reporting Act," *id.* at 21.

However, Plaintiff's FOIA request is not limited to data submitted under DCRA 2013. It seeks "*all* information submitted to BJS" under MCI, which it specifies "*includes* information . . . states are required to provide under 34 USC 60105," the U.S. Code provision containing DCRA 2013's state reporting requirement. Def.'s Statement of Facts ¶ 1; Pl's Statement of Facts ¶ 1 (emphasis added). MCI collected data after DCRA 2000 expired in 2006 and before DCRA 2013 took effect in 2015—a period of time in which the Court noted that "no DCRA reporting requirement was in effect," ECF 21 at 20 n.3—and also collected data from local jails that no version of DCRA ever required local jails to report. Instead, MCI relied on submitters to voluntarily provide this information to BJS, pursuant to BJS's own statutory authority under Title I of the Crime Control Act to gather information relating to the criminal justice system.

Accordingly, Title I's confidentiality provision applies to all responsive data from 2010 (the beginning of the timeframe specified in the FOIA request) to October 1, 2015, when no DCRA was in effect, and to all responsive data collected from local jails, which was never furnished under or gathered pursuant to DCRA because DCRA never required local jails to report data. Defendant respectfully seeks reconsideration of the Court's partial summary judgment decision's determination that such data was not protected by Exemption 3. This motion does not apply to data

submitted by *states* between October 1, 2015, and December 31, 2019, when DCRA 2013 was in effect and before the MCI program stopped collecting data.[11] Defendant is currently processing that data for other exemptions and is due to produce the non-exempt portions to Plaintiff on or before October 26, 2023. *See* ECF 26.

## I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims" before the court "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities." Fed. R. Civ. P. 54(b). "Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment." *Langevine v. District of Columbia*, 106 F. 3d 1018, 1023 (D.C. Cir. 1997). Grants of partial summary judgment which do not fully resolve the merits, "are by their terms interlocutory." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976); *accord, e.g.*, *Alaska v. FERC*, 980 F.3d 761, 764 (D.C. Cir. 1992) ("[G]rants of partial summary judgment are generally considered interlocutory orders . . .").

Rule 54(b) "recognizes [the district court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22-23 (1st Cir. 1985)). The "standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for reconsideration of final judgments," and "'[c]ourts have more flexibility in applying Rule 54(b)' than in determining whether reconsideration is

---

[11] Data collected from federal law enforcement agencies is not responsive to the FOIA request because it was not collected under the MCI program. *See* n.9, *supra*.

appropriate under Rule 59(e) and 60(b)." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (quoting *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004)). Thus, while Rule 59(e) "sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered," Rule 54(b) does not entail the same "strict prohibition." *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015). A court "may grant a Rule 54(b) motion for reconsideration so long as there are 'good reasons for doing so,'" *Rosenberg v. U.S. Dep't of Defense*, 442 F. Supp. 3d 240, 252 (D.D.C. 2020) (quoting *United States v. All Assets Held at Bank Julius Baer & Co. Ltd.*, 308 F. Supp. 3d 186, 193 (D.D.C. 2019), "such as where the court failed to consider 'data[] that might reasonably be expected to alter the conclusion reached by the court," *id.* (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)), or "where the movant presents new information that 'constitute[s] a change in the court's awareness of the circumstances,' even though it 'may not constitute a change in the actual facts of the case,'" *id.* (quoting *Judicial Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 114 (D.D.C. 2006)).

The "'[a]s justice requires'" standard for reconsideration under Rule 54(b) "indicates concrete considerations of whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223 (D.D.C. 2011) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 277 (D.D.C. 2004) (alteration in original)). "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances." *Id.* (quoting *Cobell*, 224 F.R.D. at 277)).

Defendant acknowledges that the arguments in this motion were available during the briefing on the parties' cross-motions for partial summary judgment, and Defendant apologizes to the Court and to Plaintiff for not making them more clearly or explicitly at that time. *Cf.* Def's Reply Brief at 6-7. Defendant's failure to join these issues was inadvertent error and not an attempt to stonewall or delay. Due to that error, the Court's opinion was premised on a misapprehension of the full facts concerning MCI and DCRA. Reconsideration in light of those facts, as set forth in this brief, is warranted in the interests of justice.

## II.    RECONSIDERATION IS APPROPRIATE WITH RESPECT TO THE MCI DATA PLAINTIFF SEEKS THAT BJS COLLECTED WHEN DCRA 2013 WAS NOT IN EFFECT OR THAT DCRA 2013 DID NOT REQUIRE TO BE REPORTED.

As the Court recognized, "[P]laintiff's FOIA request includes information collected by DOJ from 2010 to 2014—a period of time when no DCRA authority existed, before the reauthorization of the DCRA in 2014." ECF 21 at 20 n.3. That time period actually extends to October 1, 2015 because of the lag in implementation built into DCRA 2013. Thus, any data submitted to BJS under the MCI program during this time period could not have been submitted pursuant to DCRA as a matter of law. It was instead collected pursuant to BJS's own statutory authority under Title I to collect data on a voluntary basis. *See* 34 U.S.C. § 10132(c). Title I's confidentiality provision therefore applies to all MCI data from 2010, the starting date specified in Plaintiff's FOIA request, to October 1, 2015.

The same is true of responsive information submitted to BJS under the MCI program that was not required to be submitted by DCRA 2013. In particular, the MCI program collected death-in-custody information on deaths in local jails directly from the local jails themselves, rather than from state departments of corrections. *See* AG Report at 8. But neither DCRA 2000 nor DCRA 2013 requires local jails to submit death-in-custody information to DOJ; rather, local agencies'

11

participation in MCI was voluntary under BJS's Title I authority to engage in voluntary data collections.  DCRA 2000 imposed a requirement on states to report information on deaths in custody, including deaths in "municipal or county jail[s]" and "local or State correctional facilit[ies]," but it did not impose any requirement on municipalities, counties, or localities to report information to DOJ. 42 U.S.C. § 13704(a)(2) (2000) (current version at 34 U.S.C. § 12104).

Likewise, DCRA 2013 provides that "the State shall report to the Attorney General . . . information regarding the death of any person" in custody. 34 U.S.C. § 60105(a). It also specifies that the term "State" has the meaning given in Section 901(a) of the Crime Control Act, now codified at 34 U.S.C. § 10251(a). *Id.* § 60105(e). That provision, in turn, defines "State" to mean "any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands," *id.* § 10251(a)(2), and the immediately following provision separately defines a "unit of local government," *id.* § 10251(a)(3). The "fact that Congress differentiated between" the two terms implies that Congress did not intend for them to refer to the same thing. *Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 18 (D.D.C. 2019); *see also Chien Fan Chu v. Brownell*, 247 F.2d 790, 796 (D.C. Cir. 1957) ("We are bound to conclude that when Congress used these differing terms in the same act . . . making each word applicable to a different thing, it did not intend the carefully distinguished and separately defined words to mean the same thing." (internal quotations omitted)).

Thus, although both versions of DCRA required states to submit data on deaths in local jails, *see* 34 U.S.C. § 60105(a), the statute has never required local jails themselves to directly submit that information to DOJ. Indeed, DOJ has specifically requested Congress to consider legislation that would "[e]liminate the requirement for centralized state reporting, thus permitting

[BJA's DCRA data collection] to collect information directly from state and local correctional and law enforcement agencies, open sources, and other public sources." AG Report at 12.

As a result, any information submitted to BJS's MCI program by local jails that is responsive to the FOIA request (i.e., from 2010 through 2019 when BJS's collection ended) was not "furnished under" or submitted pursuant to DCRA 2013's (or DCRA 2000's, which had lapsed anyway) reporting requirement; instead, it was voluntarily "furnished under" BJS's independent Title I authority, and is protected from disclosure by Title I's confidentiality provision.

## III.   RECONSIDERATION IS WARRANTED TO AVOID SUBSTANTIAL HARM TO BJS

Disclosure of data voluntarily submitted to BJS under the MCI program, beyond what was required by DCRA 2013, risks significantly impeding BJS's ability to execute its mission as a federal statistical agency. Not only does BJS have statutory obligations to preserve confidentiality, including under the Title I confidentiality provision at issue here, but it also has "fundamental responsibilities as a statistical agency," including an affirmative "duty to protect the trust of individual respondents and data providers by ensuring the confidentiality and exclusive statistical use of their responses." BJS, Data Protection Guidelines at 8.[12]

BJS relies on its strict maintenance of confidentiality "[t]o uphold public trust in the integrity of the data and ensure continued cooperation from data providers and respondents." *Id.* at 9. Requiring BJS to disclose statistical information voluntarily provided under its Title I authority would harm BJS's ability to credibly promise confidentiality to data providers and respondents. Undermining respondents' confidence in BJS's ability to protect the confidentiality

---

[12] *Available at*
https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/bjs_data_protection_guidelines. pdf (last accessed September 29, 2023).

of the information they voluntarily submit would jeopardize BJS's vast data collection efforts, which cover all aspects of the criminal justice system and rely, almost exclusively, on the *voluntary* provision of data to BJS from criminal-justice agencies and the public. Congress has expressed its concern that "[e]nsuring that information provided under a pledge of confidentiality for statistical purposes receives protection is *essential* in continuing public cooperation in statistical programs," and that "[d]eclining trust of the public in the protection of information provided under a pledge of confidentiality to the agencies *adversely affects both the accuracy and completeness of statistical analyses*," 44 U.S.C. § 3571(5) & (4) (emphases added). Reconsideration and clarification as necessary to confirm that BJS can continue to rely on Title I's confidentiality provision to protect data voluntarily submitted to it is thus necessary in the interests of justice.

IV.     **A STAY OF DEFENDANT'S OBLIGATION TO PRODUCE THE RECORDS SUBJECT TO THIS RECONSIDERATION MOTION IS WARRANTED TO AVOID MOOTING THE ISSUE BEFORE THE COURT RENDERS A DECISION**

A partial stay of the Court's Order granting partial summary judgment to Plaintiff and holding the application of Exemption 3 to Plaintiff's FOIA request to be improper, *see* ECF 20, is warranted in the interests of justice to avoid mooting this reconsideration motion before the Court reaches a decision on its merits.

In considering whether to grant a stay pending final judgment in a FOIA case, courts in this district have looked to the factors that govern stays pending appeal. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, No. 13-cv-555-RDM, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016). Those factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Defendant is likely to succeed on the merits for the reasons discussed above. The second factor also favors a stay: "stays are routinely granted in FOIA cases" when disclosure "would effectively moot any appeal." *Center for Nat'l Security Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58 (D.D.C. 2002); *see also John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers) (disclosure that would moot part of a case would "create an irreparable injury."). Without the requested stay, Defendant would be required to produce all of the covered information that is not protected from disclosure by another exemption. On the third factor, Plaintiff's "interest in receiving this information immediately, while significant if [Plaintiff's] interpretation of the FOIA is correct, poses no threat of irreparable harm." *John Doe Agency*, 488 U.S. at 1309. Finally, the public interest favors a stay because of the risk, in the absence of a stay, to BJS's ability to collect vitally important information on the workings of the criminal justice system.

## CONCLUSION

For the foregoing reasons, the Court should grant reconsideration, and enter summary judgment in favor of Defendant on its claim that responsive information submitted to BJS between 2010 and October 1, 2015, and responsive information submitted to BJS by local agencies, is protected from disclosure by FOIA's Exemption 3, and the Court should stay Defendant's obligation to produce any records subject to this reconsideration motion pending its decision on the motion.

Dated: September 29, 2023                                  Respectfully submitted,

                                                          BRIAN M. BOYNTON
                                                          Principal Deputy Assistant Attorney General

                                                          MARCIA BERMAN
                                                          Assistant Branch Director

_/s/ Cormac A. Early_
CORMAC A. EARLY
D.C. Bar No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

_Counsel for Defendants_

16