**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GANNETT SATELLITE<br>INFORMATION NETWORK,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Case No. 22-cv-475 (BAH) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR
RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT WITH RESPECT TO
<u>EXEMPTION 3 AND FOR A PARTIAL STAY OF PRODUCTION</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION..................................................................................................1

II.  BACKGROUND ..................................................................................................2

III.  ARGUMENT .......................................................................................................6

    A.  Defendant offers no valid excuse for breaching its agreement to produce the records and raising untimely and waived arguments it could have made on summary judgment ..............................................................................................6

    B.  The Court has already implicitly rejected Defendant's arguments by holding that Title I does not apply to the data Plaintiff requested...............................10

    C.  Defendant's new arguments fail ...............................................................11

        1.  DCRA's temporary lapse is irrelevant...............................................11

        2.  DCRA applies to local government data.............................................12

    D.  Defendant must produce BOP data.............................................................15

IV.  CONCLUSION ...................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162 (D.D.C. 2018) .............................8

*Anand v. HHS*, No. CV 21-1635, 2022 WL 4231981 (D.D.C. Apr. 27, 2022) ............................6

*BNSF Ry. Co. v. Surface Transp. Bd.*, 453 F.3d 473 (D.C. Cir. 2006)...........................15

*Chappell v. U.S.*, 342 F.2d 935 (D.C. Cir. 1965)...........................................14

*Citizens for Resp. & Ethics in Washington v. DOJ*, 45 F.4th 963 (D.C. Cir. 2022)..................7, 9

*Citizens for Resp. & Ethics in Washington v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017) .....................7

*Davis v. D.C. Child & Fam. Servs. Agency, No. 101*, 2014 WL 12802261
(D.D.C. Oct. 20, 2014)........................................................................6

*DeFraia v. CIA*, 311 F. Supp. 3d 42 (D.D.C. 2018) .......................................8

*Est. of Gaither ex rel. Gaither v. D.C.*, 771 F. Supp. 2d 5 (D.D.C. 2011)....................6

*Fox v. D.C.*, 923 F. Supp. 2d 302 (D.D.C. 2013) .............................................6

*Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15 CIV. 1756 (KPF), 2020 WL 5743516
(S.D.N.Y. Sept. 25, 2020)....................................................................7

*Hutchins v. D.C.*, 188 F.3d 531 (D.C. Cir. 1999) .........................................15

*Moore v. Johnson*, 303 F.R.D. 105 (D.D.C. 2014)..........................................7

*Muttitt v. Dep't of State*, No. 10-cv-202, 2013 WL 12318039
(D.D.C. July 30, 2013)...........................................................6, 10, 11, 16

*NARA v. Favish*, 541 U.S. 157 (2004) ......................................................14

*Negley v. FBI*, 825 F. Supp. 2d 58 (D.D.C. 2011)...........................................6

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003)...................................................................6

*Project on Gov't Oversight, Inc. v. DHS*, No. 1:18-CV-2051-RCL, 2023 WL 2139380
(D.D.C. Feb. 21, 2023) .......................................................................8

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012)........................................................6, 7

*Sai v. TSA*, No. 14-cv-0403, 2014 WL 12944121 (D.D.C. July 31, 2014)..................................10

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009)...............................................13

**Statutes**

34 U.S.C. § 10132(c) .....................................................................................11

34 U.S.C. § 10231(a) ..................................................................................1, 8

34 U.S.C. § 60105(a) .....................................................................................3

44 U.S.C. § 3751(4) & (5) ...........................................................................10

**Other Authorities**

BJS, Mortality in Correctional Institutions, (May 15, 2009) ..........................................3

Bureau of Justice Statistics, *Federal Law Enforcement Agency Deaths in Custody Reporting Program (FDCRP)*...........................................................................16

Bureau of Justice Statistics, *Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP)* ........................................................16

Death in Custody Reporting Act of 2000, Pub. L. No. 106-297, 114 Stat. 1045 ...................12, 13

Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, 128 Stat. 2860 (2014).........13, 14

Department of Justice, *Report Regarding the Criminal Investigation into the Shooting Death of Michael Brown by Ferguson, Missouri Police Office Darren Wilson*, 4 (Mar. 4, 2015) ...........................................................................................14

Fed. R. Civ. P. 1 ...........................................................................................8

Fed. R. Civ. P. 54(b) .....................................................................................6

Letter from Senator Chuck Schumer, et al to Attorney General William Barr (July 7, 2020) ......14

Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP)), Changes Over Time .....................................................................12

Office of the New York State Attorney General, *Attorney General James Statement on Termination of Employment for NYPD Officer Pantaleo* (Aug. 19, 2019) ...........................14

## I.      INTRODUCTION

In March, the Court granted summary judgment to Plaintiff on FOIA Exemption 3 via Title I of the Crime Control Act.  Defendant spent the next four months deciding whether to seek reconsideration.  It chose not to.  Instead, the parties agreed that Defendant would, by October 26, process all the responsive records: death-in-custody data submitted under its Mortality in Correctional Institutions ("MCI") program.  Breaching that agreement, Defendant asks the Court to reconsider its decision as to most of them.  It relies entirely on arguments it admits it should have raised on the first go-around.  But reconsideration is inappropriate for issues a party claims to have inadvertently failed to raise at an earlier opportunity.  Reconsideration is especially inappropriate here given that Defendant explicitly waived its reliance on Exemption 3 in a joint status report, waited until the eve of production to file its motion, and asserts an argument in considerable tension with its arguments on summary judgment.

Defendant also seeks reconsideration on grounds the Court has already rejected but without offering any reason to disturb the Court's holding.  It claims that **_some_** responsive data was "furnished under" Title I and thus subject to Title I's confidentiality provision, which it invokes in connection with Exemption 3.  34 U.S.C. § 10231(a).  But the Court has already held that **_no_** responsive data was "furnished under" Title I.  Defendant does not even acknowledge this holding let alone contend with it.  Reconsideration is inappropriate for that reason too.

Were the Court to reach Defendant's new arguments, it should reject them.  Defendant argues that certain data could not have been furnished under the Death in Custody Reporting Act ("DCRA"), apparently assuming (contrary to the Court's holding) that they must instead have been furnished under Title I.  As to the data submitted while DCRA temporarily lapsed, Defendant's argument is illogical by implying that the same data ping ponged from being furnished under DCRA, furnished under Title I, and furnished under the DCRA again, all in less than a decade,

without any significant changes in what data was collected or how.  As to the data submitted by local governments rather than states, Defendant misreads the statute.  Under DCRA's plain terms, any local government data was furnished under it.

Finally, without overtly seeking reconsideration on the point, Defendant expresses—only in footnotes—a novel understanding of the request's scope as excluding any data submitted by federal agencies, including the Bureau of Prisons.  Defendant says that any such data was collected under programs other than MCI: the program referenced in the request  The Court should reject this argument because it is forfeited for being raised only in footnotes, untimely, inconsistent with the Court's holding that BOP data is responsive, factually inaccurate, and contradicted by Defendant's own statement in its reconsideration motion that BOP submits data through MCI.  In any case, the Court should confirm that BOP data is responsive and Defendant must produce it.

## II.      BACKGROUND

In April 2021, Plaintiff filed a FOIA request with Defendant for all death-in-custody data "submitted to Bureau of Justice Statistics Under the Mortality in Correctional Institutions program" from 2010 through the date the request was processed.  Mem. Op. at 5, ECF No. 21.  Defendant denied the request under Exemption 3, citing Title I.  Plaintiff timely administratively appealed that denial, and DOJ affirmed the denial on appeal.  *Id*. at 6.  Plaintiff sued.

In their first joint status report, the parties agreed that "it would be most efficient to resolve the application of Exemption 3 at the outset, and to reserve determination of the applicability of any other exemptions should Plaintiff prevail on that issue."  Joint Status Report (May 20, 2022), ECF No. 10.  The Court adopted that proposal and ordered summary judgment briefing limited to Exemption 3.  *See* Minute Order (May 31, 2022).

Each party filed two summary judgment briefs addressing the text, structure, and history of Title I and DCRA and how Defendant's components have implemented the statutes.

Defendant's briefs cited the relevant statutory provisions and historical considerations that underlie its reconsideration arguments.  Both its summary judgment briefs cited the provision of DCRA requiring states to arrange for the quarterly production of data for deaths related to any "State or local correctional facility."  34 U.S.C. § 60105(a).  *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 3, ECF No. 12-1 ("D. SJ Br."); Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment at 3, ECF No. 17 ("D. SJ Rep.").  And its opposition/reply brief recited the same history of DCRA's enactment, expiry, and reinstatement that it relies on in its reconsideration motion.  *See* D. SJ Rep. at 6. But instead of arguing (as it does now) that this history demonstrates a ***shift*** in which statutes authorized its data collection—DCRA from 2000-2006, Title I from 2006-2015, and back to DCRA again—it argued that it shows that those efforts were authorized by Title I ***all along***: "If Plaintiff were correct that the death-in-custody information was only provided under DCRA, rather than Title I, then the expected result would be that there would be no such publications by BJS [the Bureau of Justice Statistics] prior to 2000 or from 2006 to 2014."  *Id*. at 7.

In its opening brief, Plaintiff noted that MCI collects data from BOP.  Citing Defendant's website, it observed that MCI "collects inmate death records from … Federal Bureau of Prisons." Plaintiff's Memorandum in Support of Its Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment at 5, ECF No. 13-1 ("P. SJ Br.") (quoting BJS, Mortality in Correctional Institutions, (May 15, 2009), https://bjs.ojp.gov/data-collection/mortality-correctional-institutionsmci-formerly-deaths-custody-reporting-program#methodology-0).  In its opposition/reply, Defendant did not dispute that MCI collects BOP data.  *See generally* D. SJ Rep.

- 3 -

On March 29, 2023, the Court granted summary judgment to Plaintiff on Exemption 3. Consistent with Plaintiff's undisputed understanding of the request, in the first sentence of its opinion the Court construed the request as seeking "individual-level information on the deaths of incarcerated people in the custody of local jails, state prisons, ***and the Federal Bureau of Prisons***." Mem. Op. at 1, ECF No. 21 (emphasis added).

The "key question" in the case, the Court recognized, was "whether the text of the Crime Control Act's confidentiality provision exempts disclosure of the requested information under FOIA Exemption 3." Mem. Op. at 1-2. It addressed that question from four related angles: Title I's text, structure and relation with other statutes, purpose, and legislative history. In its analysis of all but legislative history, the Court held unambiguously that Title I does not apply to the type of death-in-custody data at issue in Plaintiff's request:

- Text: "Nothing in Title I, let alone in its confidentiality provision, requires reporting on the specific type of data the DCRA mandates." Mem. Op. at 13.

- Structure: "In context, Title I of the Crime Control Act does not cover the specific death-in-custody reporting requirements provided in the DCRA." *Id.* at 15.

- Purpose: "DOJ does not cite any provision of the Crime Control Act that requires certain statistical recordkeeping and reporting, let alone of death-in-custody instances." *Id.* at 19.

The Court also understood that Plaintiff's FOIA request sought data collected between 2010 and 2014, "a period of time when no DCRA authority existed." Mem. Op. at 20 n.3. But it declined to consider that fact because "[n]either party raises that plaintiff requests information during a time when no DCRA reporting requirement was in effect." *Id.*

In four monthly joint status reports following the Court's summary judgment order, Defendant stated that it was "continuing to evaluate its options in light of the Court's Order, including to seek reconsideration." Joint Status Report (Apr. 12, 2023), ECF No. 22; Joint Status Report (May 12, 2023), ECF No. 23; Joint Status Report (June 12, 2023), ECF No. 24; Joint Status

Report (July 14, 2023), ECF No. 25.  Then, in the parties' final joint status report on July 28, they reported their "agree[ment] that Defendant will complete processing and production of responsive records by October 26, 2023," and to address any remaining disputes about "the scope of the exemptions … through cross-motions for summary judgment after Defendant completes production."  Joint Status Report (July 28, 2023), ECF No. 26.

Instead of honoring that agreement, Defendant waited another two months before moving for reconsideration, now less than a month before its agreed production deadline.  *See generally* Partial Motion for Reconsideration of Partial Summary Judgment with Respect to Exemption 3 and for a Partial Stay of Production, ECF No. 27 ("MPR").  The motion asks the Court to revisit its Exemption 3 ruling for most of the records.  Specifically, it seeks to apply Exemption 3 to (a) all death-in-custody data collected before October 1, 2015 because DCRA was not in effect, and (b) all death-in-custody data reported by local agencies because, supposedly, DCRA does not require their data to be reported.  MPR at 15.  It also buries a novel argument only in two footnotes: that it need not process federal data because, supposedly, MCI does not collect that data and hence that data is not responsive to Plaintiff's request.  MPR at 5 n.10, 9 n.11.  Despite arguing this, Defendant itself acknowledges in its reconsideration motion that "MCI collected data directly from … Federal Bureau of Prisons."  *Id.* at 2.

Defendant sought a partial stay of its production deadline as to the documents referenced in its reconsideration motion.  MPR at 14-15.  The Court granted that stay on October 3, 2023.  Minute Order (Oct. 3, 2023).[1]

---

[1] Defendant did not seek a stay of its production of BOP data, so the Court did not grant one. Because BOP data is responsive, and the Court held as much in the first sentence of its opinion, Plaintiff understands that Defendant is required to produce it by October 26.

# III.   ARGUMENT

**A.   Defendant offers no valid excuse for breaching its agreement to produce the records and raising untimely and waived arguments it could have made on summary judgment.**

Rule 54(b) provides that an interlocutory decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Courts grant these motions only if "justice requires."  *Muttitt v. Dep't of State*, No. 10-cv-202, 2013 WL 12318039, at *1 (D.D.C. July 30, 2013) (Howell, J.).  In general, justice may require reconsideration in three circumstances: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order."  *Id*. Thus, it is well-established that reconsideration under Rule 54(b) "cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier."  *Id*. at *2 (cleaned up).  *See also, e.g.*, *Est. of Gaither ex rel. Gaither v. D.C.*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011); *Negley v. FBI*, 825 F. Supp. 2d 58, 62 (D.D.C. 2011*); Fox v. D.C.*, 923 F. Supp. 2d 302, 305 (D.D.C. 2013); *Anand v. HHS*, No. CV 21-1635, 2022 WL 4231981, at *1 (D.D.C. Apr. 27, 2022).

The same rule applies perforce when the moving party raises arguments on reconsideration that it had already waived.  *See Davis v. D.C. Child & Fam. Servs. Agency, No. 101*, 2014 WL 12802261, at *3 (D.D.C. Oct. 20, 2014).  And it applies with special force when a party's new argument would have undermined an argument it made in the first instance, which may evidence a strategic decision the party should in fairness have to live with.  *See Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003).  *See also, e.g.*, *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 340 (S.D.N.Y. 2012) ("[I]f the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver,

the Rule 54(b) motion should be denied.").  These principles apply to government agencies like all other parties.  *Moore v. Johnson*, 303 F.R.D. 105, 109 (D.D.C. 2014) (holding that government agency's "strategic decisions" not to make prior argument did not warrant reconsideration).

Further, while Rule 54(b) motions do not have a deadline, courts consider their timeliness when deciding whether to grant reconsideration.  *See, e.g.*, *Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15 CIV. 1756 (KPF), 2020 WL 5743516 (S.D.N.Y. Sept. 25, 2020).  Timeliness is especially important in FOIA cases like this one, for which the D.C. Circuit has held that enforcing a "robust timeliness rule encourages the Government to present all its arguments the first time around" and thus "serves FOIA's goal of a prompt and efficient process."  *Citizens for Resp. & Ethics in Washington v. DOJ*, 854 F.3d 675, 680 (D.C. Cir. 2017).  For this reason, courts in FOIA cases are not required to consider "a new legal theory justifying the withholding" of records under an exemption the agency has already cited, *Citizens for Resp. & Ethics in Washington v. DOJ*, 45 F.4th 963, 979 (D.C. Cir. 2022)—exactly what Defendant is asking the Court to do here.

Under these standards, reconsideration is inappropriate.  Defendant "acknowledges that the arguments in this motion were available during the briefing on the parties' cross-motions for partial summary judgment."  MPR at 11.  It also claims that its failure to raise the arguments was "inadvertent error."  *Id*.  That alone suffices to defeat reconsideration.  *See Rockland Exposition*, 894 F. Supp. 2d at 339 (holding that reconsideration is inappropriate where the moving party inadvertently failed to make an argument it could have made earlier).  Defendant suggests that its reconsideration arguments were nascent in its prior filings.  *See* MPR at 11 (apologizing for failing to make its reconsideration arguments "more clearly or explicitly").  But it provides no citation to those filings, and that is false.  The arguments were not there.

There is more. One of its two arguments on reconsideration—the argument relating to DCRA's effective date—is inconsistent with its summary judgment argument, suggesting either an explicit or implicit strategic decision not to make it. On summary judgment, Defendant argued that the death-in-custody data was "furnished under" Title I at all times relevant to this case, including when DCRA was in effect, and thus exempt under Title I's confidentiality provision. D. SJ Rep. at 6-7. *See also id.* at 1 (citing 34 U.S.C. § 10231(a)). It now asserts the opposite: that the data was furnished under Title I when and only when DCRA was not in effect. *See* MPR 10. Defendant, of course, could have made both arguments in the alternative in its initial motion. But doing so would have risked undermining its theory of the case, as alternative arguments often do. It should in fairness have to live with that decision.

And there is even more: Defendant agreed to produce the records but breached that agreement. After stating in the four prior filings that it was deciding whether to seek reconsideration, it dropped that language and instead "agree[d]" to process all the responsive records by October 26, 2023. Joint Status Report (July 28, 2023). Agreements made in joint status reports have a "binding nature," *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47 (D.D.C. 2018), and like other agreements to narrow litigation disputes, failing to enforce them would undermine the purpose of civil litigation: "offering a 'just, speedy, and inexpensive determination of every action,'" *Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) (quoting Fed. R. Civ. P. 1). Defendant must be held to its agreement to produce the records.

The same result follows under the doctrine of waiver. It is black letter law that "where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles." *Project on Gov't Oversight, Inc. v. DHS*, No. 1:18-CV-2051-RCL, 2023 WL 2139380, at *5 (D.D.C. Feb. 21,

2023).  Waiver can be inferred "from the words and actions of the parties," including, in FOIA cases, "in the shift in joint status reports from referring to any remaining disputes to only disputes related to" specific withholdings.  *Id*.  More than any other entity in the country, Defendant Department of Justice fits the bill of a "sophisticated party to a FOIA case."  *See Citizens for Resp. & Ethics in Washington* 45 F.4th at 978 ("The government is a party in every FOIA case, is well versed in the conduct of FOIA litigation, and is fully capable of protecting its own interests in that arena.").  Again, by agreeing to produce the records after losing on Exemption 3, and after agreeing at the outset of the case that the Court's Exemption 3 decision would control, Defendant waived any further reliance that exemption.  *See* Joint Status Report (May 20, 2022).

Against all this Defendant makes two points.  First, it argues that its failure to make its arguments led the Court's opinion to be "premised on a misapprehension of the full facts concerning MCI and DCRA."  MPR at 11.  That is wrong.  The Court was fully aware of the facts. Defendant cited both the text of DCRA (on which it relies for its local government argument) and DCRA's effective dates.  *See* D. SJ Br. at 3; D. SJ Rep. at 3, 6.  The Court cited the same text of DCRA.  Mem. Op. at 2.  And it expressly recognized that DCRA was not in effect for part of the request's timeframe, deciding not to address the issue because the parties did not ask it to.  Mem. Op. at 20 n.3.  The Court misapprehended nothing.

Second, Defendant argues that letting the Court's decision stand would harm its component, BJS, by undermining supposed assurances of confidentiality BJS gave to data providers.  MPR at 13-14.  But it provides no evidence of any such assurance apart from the text of Title I, which this Court has already held does not exempt the responsive data; thus it can provide no such assurance.  *See id*; *see also* Section III.B, *infra*.  Instead, Defendant cites a general congressional finding codified in a different title–Title 44—of the U.S. Code ( "Public Printing

and Documents") that has nothing to do with the data at issue in this case.  *See* MPR at 14 (citing 44 U.S.C. § 3751(4) & (5)).  Such a flimsy showing cannot justify reconsideration given Defendant's lack of any reason for not raising its arguments on summary judgment, the inconsistency between those arguments and the ones it chose to make, its explicit waiver of Exemption 3, and the needless delay and resource drain this motion has caused.

### B.   The Court has already implicitly rejected Defendant's arguments by holding that Title I does not apply to the data Plaintiff requested.

Parties also generally may not raise arguments on reconsideration the Court has already rejected, either explicitly or implicitly.  *Muttitt*, 2013 WL 12318039, at *2;  *Sai v. TSA*, No. 14-cv-0403, 2014 WL 12944121, at *1 (D.D.C. July 31, 2014).  Here, though the Court did not explicitly consider the arguments Defendant makes on reconsideration, it has already considered and rejected a necessary assumption underlying both arguments.  Reconsideration is therefore inappropriate.

Defendant's reconsideration arguments do not directly address what the Court recognized as the "key question" in this case: "whether the text of the Crime Control Act's confidentiality provision exempts disclosure of the requested information under FOIA Exemption 3."  Mem. Op. at 1-2.  The question they primarily address is different: whether the death-in-custody data was furnished under DCRA.  Defendants argue that the data was not furnished under DCRA either because DCRA was not in effect or because it (purportedly) does not apply to local governments.  But these arguments assume that any data not furnished under DCRA was necessarily furnished under Title I.  Otherwise whatever DCRA requires would not matter to the "key question" in this case: whether FOIA Exemption 3, *via Title I*, applies to the records.  Mem. Op. at 1-2.

The Court has rejected that assumption.  As discussed above, it held that Title I's text, history, and purpose all point to the same conclusion: Title I, by its own terms, does not

contemplate the collection of the type of death-in-custody data Plaintiff requested and its confidentiality provision therefore does not apply to it.  *See, e.g.*, Mem. Op. at 19 ("DOJ does not cite any provision of the Crime Control Act that requires certain statistical recordkeeping and reporting, let alone of death-in-custody instances."); *see also id.* at 13, 15.  In other words, the data was not furnished under Title I, whether or not it was furnished under DCRA.[2]

Further, the Court has rejected the only argument Defendant now makes to support its assumption.  Defendant argues that the data "was instead collected pursuant to BJS's own statutory authority under Title I to collect data on a voluntary basis," citing 34 U.S.C. § 10132(c).  MPR at 11.  But it made this precise argument on summary judgment and the Court found it wanting.  *See* Mem. Op. at 19 (observing that Defendant "seemingly posits that the Crime Control Act exhibits a purpose to collect statistics, such as those described in the DCRA" and holding that "[t]hat argument is unpersuasive" because the provision does not "require[] certain statistical recordkeeping and reporting, let alone of death-in-custody instances").  Defendant does not acknowledge these holdings, let alone show that they constitute "a clear error in the first order." *Muttitt*, 2013 WL 12318039, at *1.  They do not warrant reconsideration.

### C.     Defendant's new arguments fail.

For the above reasons, the Court should not reach Defendants' new arguments.  Were it to do so, it should reject them.

#### 1.     DCRA's temporary lapse is irrelevant.

Defendant argues that any data collected while DCRA temporarily lapsed was necessarily "furnished under" Title I such that the latter's confidentiality provision applies.  MPR at 8-9.  That argument depends entirely on the assumption, which the Court has already rejected, that Title I

---

[2] To be sure, the Court's decision relied in part on the interplay between Title I and DCRA.  But its holding also rested on factors specific to Title I.

authorizes BJS to collect death-in-custody data.  Beyond that, it is illogical: it implies that BJS started collecting death-in-custody data under DCRA,[3] continued collecting that same data without any significant changes under a brand-new statutory authorization, and returned to DCRA, again without any significant changes, over less than a decade.  More likely, it simply continued collecting the data because it found it valuable or out of inertia.

Defendant responds by pointing out that BJS made a few changes to its data collection after DCRA expired in 2006, suggesting this as evidence of a new statutory authorization.  MPR at 3.  But these changes are trivial.  Most involve adding data points that fall within DCRA's mandate to provide "a brief description of the circumstances surrounding the death."  Death in Custody Reporting Act of 2000, Pub. L. No. 106-297, 114 Stat. 1045.  *See* Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP)), Changes Over Time,  https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program#changes-over-time-0 (noting additions to questionnaires of "whether the death was incident to use of force by facility staff" and asking respondents "to specify the type of intoxication that led to the death").  They do not evidence a fundamentally new statutory basis for collecting the information, as Defendant argues.

### 2.    DCRA applies to local government data.

Defendant also argues that the Court should reconsider Exemption 3 as to data submitted by local governments.  Specifically, it argues that because DCRA supposedly imposes reporting obligations only on states, not local governments, only state-supplied information was furnished

---

[3] Defendant reprises its argument that BJS was collecting similar data before DCRA was enacted as if to suggest that the data was furnished under Title I, *see* MPR at 3-4, again without acknowledging that the Court has squarely rejected that argument because BJS started collecting new types of data after DCRA's 2000 enactment, *see* Mem. Op. at 19.

under DCRA, and so local government information must be furnished under Title I.  This argument also assumes that Title I applies to death-in-custody data, which, again, the Court held it does not.

Plus, the argument is baseless.  Both versions of DCRA explicitly provide for the reporting of local government data.  *See* Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, 128 Stat. 2860 (2014) (requiring reporting of "information regarding the death of any person who is detained, under arrest, or is in the process of being arrested, is en route to be incarcerated, or is incarcerated at a municipal or county jail, …[or] other local of State correctional facility"); Death in Custody Reporting Act of 2000, Pub. L. No. 106-297, 114 Stat. 1045 (requiring reporting of "person who is in the process of arrest, is en route to be incarcerated, or is incarcerated at a municipal or county jail, State prison, or other local or State correctional facility").  So, when DCRA is in effect, that data is furnished under DCRA.

Defendant argues that these provisions are irrelevant because, it says, DCRA requires the states, not the local governments themselves, to submit local government data.  MPR at 12-13.  True, DCRA only requires reporting by states.  But it does not say ***how*** states must report the data, and certainly does not prohibit states from delegating their own reporting requirements to their subordinate local governments.  *See, e.g.*, *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009) ("A political subdivision … is a subordinate unit of government created by the State to carry out delegated governmental functions.").  That delegation would only be sensible given that the local governments presumably possess their own data, and DCRA does not require the state to serve as a middleman.

Indeed, that delegation is the only plausible read of the situation.  Otherwise, unless Defendant receives duplicate local government data—one set from the local government, the other from the state—states would regularly be derelict in their reporting requirements, while the well-

established presumption of regularity provides the opposite.  *See NARA v. Favish*, 541 U.S. 157, 174 (2004) (articulating a "presumption of legitimacy" that ordinarily may only rebutted by "clear evidence"); *Chappell v. U.S.*, 342 F.2d 935, 938 n.5 (D.C. Cir. 1965) (applying presumption of regularity to state officials).  Defendant does not claim to have received such duplicate data.

Indeed, Defendant's interpretation would encourage needless duplication of submissions of local government data.  DCRA 2013 provides for a reduction of grant funds to states that violate their reporting requirements.  *See* Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, 128 Stat. 2861 (2014).  So under Defendant's interpretation, according to which local government submissions are not attributable to states, the state would have to resubmit the same local government data on pain of loss of funding.  Such a statute would be absurd.

Defendant's interpretation of DCRA would also eviscerate its purpose: to provide "oversight, transparency, and accountability in law enforcement actions."  Mem. Op. at 14.  As the text makes clear, this includes oversight of local governments.  Indeed, DCRA was reenacted in 2014 "following the tragic law enforcement-related deaths of two Black men—Michael Brown in Ferguson, Missouri and Eric Garner in New York City, New York,"[4] both of whom were killed by local police officers.[5]  Plus, it would eviscerate that purpose in an absurd way.  After all, on Defendant's interpretation, whether local governments receive oversight depends entirely on who

---

[4] Letter from Senator Chuck Schumer, et al to Attorney General William Barr (July 7, 2020) https://www.judiciary.senate.gov/press/dem/releases/senators-request-full-implementation-enforcement-of-the-death-in-custody-reporting-act.

[5] Department of Justice, *Report Regarding the Criminal Investigation into the Shooting Death of Michael Brown by Ferguson, Missouri Police Office Darren Wilson*, 4 (Mar. 4, 2015) https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/04/doj_report_on_shooting_of_michael_brown_1.pdf;  Office of the New York State Attorney General, *Attorney General James Statement on Termination of Employment for NYPD Officer Pantaleo* (Aug. 19, 2019), https://ag.ny.gov/press-release/2019/attorney-general-james-statement-termination-employment-nypd-officer-pantaleo.

takes the clerical step of submitting local government data to Defendant: if the state, DCRA applies; if the local government, it does not.  And on that same interpretation, local governments have absolute discretion whether DCRA applies to them.   These results are also absurd.  But they need not follow because another reasonable interpretation is available: if a local government submits death-in-custody data, that submission is attributable to the state and thus furnished under DCRA.

> **D.     Defendant must produce BOP data.**

Finally, Defendant buries in two footnotes a claim that would dramatically shrink the scope of the request: supposedly, BJS collects federal agency data through a different program from MCI, the Federal Law Enforcement Agency Deaths in Custody Reporting Program ("FDCRP").  That program "covers arrest-related deaths and deaths in custody information, from federal law-enforcement agencies" but "is distinct from the MCI data collection specified in Plaintiffs' FOIA request."  MPR at 5 n.10.  Thus, Defendant argues, data submitted by federal law enforcement agencies, presumably including BOP, is "not responsive to the FOIA request."[6]  *Id*. at 9 n.11.  The Court should reject that claim for no less than five reasons.

First, it is forfeited because made only in footnotes.  It is well-established that parties forfeit arguments made only in footnotes, especially footnotes in motions for reconsideration, *see BNSF Ry. Co. v. Surface Transp. Bd.*, 453 F.3d 473, 478-79 (D.C. Cir. 2006), and especially when they are "cursory."  *Hutchins v. D.C.*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc).  Both apply here.  In particular, the statement is so cursory that Defendant does not even say which federal law enforcement agencies are at issue.  It also cites no source that MCI does not collect data from them.

---

[6] Defendant does not single out any federal agencies.  But it only excludes from its reconsideration motion data submitted by "states" when DCRA 2013 was in effect, implying that it believes no federal agency data is responsive.  MPR at 8-9.

The website it cites says only that FDCRP collects data from certain unspecified federal law enforcement agencies.[7]  That has no bearing on whether MCI collects that same data—the relevant question here.

Second, the argument is untimely.  Plaintiff argued on summary judgment that BOP data is responsive.  *See* P. SJ. Br. at 5.  Defendant did not dispute this in its opposition reply.  *See generally* D. SJ Rep.  And, as with its other arguments, it gives no reason for not raising the issue the first time.

Third, the Court held in the first sentence in its opinion that BOP data is responsive.  *See* Mem. Op. at 1.  Defendant does not acknowledge this holding, let alone argue that it is a "clear error in the first order" warranting reconsideration. *Muttitt*, 2013 WL 12318039, at *1.

Fourth, MCI does in fact collect BOP data.  So much is plain from Defendant's own MCI webpage, which says that MCI "[c]ollects inmate death records from … Federal Bureau of Prisons."[8]

Fifth, even Defendant admits as much in the body of its reconsideration motion despite seeming to protest the point in footnotes.  *See* MPR at 2.

The Court should reject Defendant's argument and confirm that BOP data must be produced.

## IV.    CONCLUSION

The Court should not entertain Defendant's new arguments.  Defendant should have made them on summary judgment and offers no valid reason for raising them anew, particularly since it

---

[7] *See* Bureau of Justice Statistics, *Federal Law Enforcement Agency Deaths in Custody Reporting Program (FDCRP)*, https://bjs.ojp.gov/data-collection/federal-law-enforcement-agency-deaths-custody-reporting-program-fdcrp.

[8] Bureau of Justice Statistics, *Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP))*, https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program#methodology-0.

has affirmatively waived Exemption 3.  Plus, the Court has already rejected their fundamental premise—that Title I applies to death-in-custody data—and Defendant does not even argue, much less demonstrate, that that holding was a clear error of the first order.  But even if the Court were to reach Defendant's new and untimely arguments, it should reject them on their merits.  And it should confirm that BOP data is responsive.  In all aspects, reconsideration should be denied.

Dated: October 17, 2023

Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
match@loevy.com
foia@loevy.com

*Attorneys for Plaintiff*