UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GANNETT SATELLITE INFORMATION NETWORK, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:22-cv-00475 |

## **DECLARATION OF AMY LAUGER**

I, Amy Lauger, declare the following to be true and correct:

1. I am a GS-15 senior statistician at the Bureau of Justice Statistics (BJS) with nearly 20 years of experience as a statistician within the federal government. I have worked at BJS since September 2019. In my current role as senior statistician, I am responsible for providing statistical advice and guidance on BJS's efforts to establish, maintain, and revise national justice statistical programs. I work with BJS's senior management to provide substantive and technical direction to nationwide statistical series and serve as an expert and consultant in areas of assigned responsibilities. As much of my career, including my years at the U.S. Census Bureau, has included work regarding data confidentiality and privacy, I routinely advice on such matters for BJS.

2. The statements I make in this declaration are based on my personal knowledge, information provided to me in the course of my official duties, and my review of documents and data kept by BJS in the ordinary course of business.

3. I am familiar with the Bureau of Justice Statistics' (BJS's) handling of the Freedom of Information Act (FOIA) request submitted by the Plaintiff, Gannett Satellite Information

1

Network. This declaration provides information concerning BJS's processing of records responsive to the Plaintiff's FOIA request and redaction of information to safeguard against the clearly unwarranted invasion of personal privacy and otherwise uphold FOIA requirements.

4. BJS uses statistical disclosure avoidance meth ods to protect its datasets to meet confidentiality standards for its statistical datasets. Several methods may be used to limit the risk of identification in sensitive datasets. The National Institute of Standards and Technology's "De-Identification of Personal Information" provides an overview of de-identification methods and issues, and is "intended for use by officials, advocacy groups, researchers, academics, and other members of communities that are concerned with the practical and policy issues involving the creation, use, archiving, and sharing of data containing personal information."[1] The document identifies several widely recognized identification protection methods:

- Suppression
- Generalization
- Perturbation
- Swapping
- Sub-sampling[2]

5. Most of these types of de-identification methods alter the record in some way or exclude certain records and, therefore, are not suitable for a response to a FOIA request, as in the case of the Mortality in Correctional Institutions (MCI) data. Therefore, BJS only considered suppression methods. Suppression methods do not alter or exclude records that would be responsive to a FOIA request. BJS decided to employ the suppression method known as k-anonymity as the main approach for determining which cells to redact in the records that were responsive to the Plaintiff's FOIA request. This approach allows for a quantitative classification

---

[1] Garfinkel, S. (2015), De-identification of personal information, National Institute of Standards and Technology, Gaithersburg, MD. https://doi.org/10.6028/NIST.IR.8053., 1.
[2] Garfinkel, 20.

2

of the risk of re-identification and uses an efficient and objective optimization method that minimizes the number of redacted cells while protecting against the unwarranted invasion of personal privacy.

6. Dr. Latanya Sweeney, currently a professor of computer science at Harvard, developed the k-anonymity method over twenty years ago.[3] Sweeney describes the problem and solution as:

> "Consider a data holder, such as a hospital or a bank, that has a privately held collection of person-specific, field structured data. Suppose the data holder wants to share a version of the data with researchers. How can a data holder release a version of its private data with scientific guarantees that the individuals who are the subjects of the data cannot be re-identified while the data remain practically useful? The solution provided in this paper includes a formal protection model named k-anonymity and a set of accompanying policies for deployment. A release provides k-anonymity protection if the information for each person contained in the release cannot be distinguished from at least k-1 individuals whose information also appears in the release."[4]

7. In her paper, Sweeney used an example with medical information combined with voter registration lists to illustrate the problem. She used three variables common to the datasets – age, sex, and ZIP code – to identify the then-governor of Massachusetts in the medical dataset. The identification allowed her to read through the governor's medical records, which included nearly 100 attributes of data including diagnosis, medications, procedures, and many other attributes.[5] This knowledge could reasonably be expected to constitute an unwarranted invasion of personal privacy. This sort of data linkage is also possible with records or information compiled for law enforcement or corrections purposes, including the Mortality in Correctional Institutions data, which contain several attributes that can be linked to other available datasets and many attributes

---

[3] Sweeney, L. (2002), k-anonymity: a model for protecting privacy. International Journal on Uncertainty, Fuzziness and Knowledge-based Systems, 10 (5); 557-570. https://doi.org/10.1142/S0218488502001648. (Also available at https://epic.org/wp-content/uploads/privacy/reidentification/Sweeney_Article.pdf.)
[4] Sweeney, L., 557.
[5] Sweeney, L., 558-559.

with sensitive and specific data about the decedent's legal information, medical history, and cause and manner of death.

## KEY DECISIONS FOR PROTECTING THE MCI DATASET

8. The primary method used to protect the MCI dataset was k-anonymity. This algorithm allows for the specification of several parameters. The section below describes parameters that were chosen for this analysis.

9. "Quasi-identifiers" are variables in a dataset that could be used to identify an individual when combined with other information, either on the MCI dataset or any other available data sources. BJS considered two primary sources that could be used in conjunction with the MCI dataset:

   a. Inmate search directories: many jurisdictions have online databases of persons in their custody or released from their custody. The access and scope of the directories vary by jurisdiction.

   b. Press releases and news articles: when an incarcerated individual dies, especially due to atypical circumstances, press releases and news articles often come out, and often include identifying information about the decedent and circumstances surrounding the fatality.

10. BJS determined that the following variables are quasi-identifiers, in that unique combinations of values could be used to identify someone and information about them.

| Information | Column(s) |
|---|---|
| State | State |
| Release/Death Date | Deathmon, Deathday |
| Facility | Facname, Facloc |
| Race | Race, Hispanic, Race1, Race2, Race3, Race4, Race5, Race6, Othrace |
| Admission Date | Admitmon, Admitday, Admityr |
| Offense | Curroff1, Curroff2, Curroff3, Curroff4, Curroff5 |

11. For *k*, BJS used k=2, which means that each possible combination of values for the set of quasi-identifiers will relate to at least 2 individual records.

12. BJS set the parameter "importance" to null. This setting means that no variables are identified as priorities to not be redacted. As such, the algorithm will minimize the number of cell suppressions, agnostic to any importance of a particular column.

13. BJS set the parameter "alpha" to 1. Alpha determines how missing values are accounted for in the set of quasi-identifiers. As an illustration, consider this small dataset with three quasi-identifiers.

14. In Table 1 below, Person 1's record violates k-anonymity with k=2 because only one record contains the values 2015, State = 1, and Race = 2. However, Person 2 and Person 3's records satisfy k-anonymity because there are two records with 2015, State = 1, and Race =1. If, however, the dataset included a Person 4 with no information provided for their Race, alpha determines how to account for that record.

Table 1.

|  | Year | State | Race | Number of records with same combination |
|---|---|---|---|---|
| Person 1 | 2015 | 1 | 2 | 1 |
| Person 2 | 2015 | 1 | 1 | 2 |
| Person 3 | 2015 | 1 | 1 | 2 |

15. Table 2 below illustrates how records are counted when alpha is set to 1. In this case, Person 4's race is treated as a wildcard which could represent any value. So, it is considered a match with all cases, and all cases are considered a match with it. Thus, all records, including Person 1's are now deemed as satisfying k-anonymity with k=2.

Table 2.

| alpha = 1 | Year | State | Race | Number of records with same combination |
|---|---|---|---|---|
| Person 1 | 2015 | 1 | 2 | 2 |
| Person 2 | 2015 | 1 | 1 | 3 |
| Person 3 | 2015 | 1 | 1 | 3 |
| Person 4 | 2015 | 1 | [Blank] | 4 |

16. Table 3 below illustrates how records are counted when alpha is set to 0. In this case, Person 4's record is similarly counted as matching 4 records. However, it is not treated as a match for the Person 1, Person 2, and Person 3 records. Thus, Person 1 is deemed as NOT satisfying k-anonymity with k=2.

Table 3.

| alpha = 0 | Year | State | Race | Number of records with same combination |
|---|---|---|---|---|
| Person 1 | 2015 | 1 | 2 | 1 |
| Person 2 | 2015 | 1 | 1 | 2 |
| Person 3 | 2015 | 1 | 1 | 2 |
| Person 4 | 2015 | 1 | [Blank] | 4 |

17. BJS set alpha to 1, which results in fewer redactions than other values of alpha.

## OTHER DECISIONS

18. A few other techniques were employed either before or after the k-anonymity algorithm was applied (see below).

19. *Redacting Unique Values*: BJS needed to determine how to provide adequate protection against identification of an inmate given that several columns had a relatively high proportion of unique values. If a value is unique within a column, the row will necessarily violate k-anonymity where k=2 (*i.e.*, the row is not indistinguishable from at least 1 other record). To limit the effect

of these rare values on the overall redaction results, BJS added a step before applying the k-anonymity approach. In this step, BJS redacted any value that was unique within its column.

20. *Redacting Values in Related Columns*: Several columns in the MCI dataset are strongly related to each other. In some cases, a redaction of one column can be rendered meaningless if another related column is not redacted. For instance, consider this illustrative partial record in Table 4 below.

Table 4.

| State | Facname | Facloc | Race | Race1 |
|---|---|---|---|---|
| **Redacted** | San Quentin State Prison | San Quentin | Redacted | 1 |

21. In this case, the unredacted information reveals that State = California and Race = 1. Due to relationships like these, BJS applied the following steps after the main set of redactions to achieve k-anonymity:

    a. If any of Race, Race1, Race2, Race3, Race4, Race5, Race6, Othrace, or Hispanic is redacted, redact all the others that are not blank. Thus, the additional redactions of race variables ensure that all relevant race information is eliminated, to protect the identity of the inmate.

    b. If cause is redacted, redact all of Illspec, Drugspec, Selfspec, Accspec, Suicspec, Homispec, Otherspec, Forcespec if they are not blank. Similarly, the additional redactions of cause of death ensure that all relevant cause of death is eliminated.

    c. If State is redacted redact Facname and Facloc if they are not blank.

    d. If Facname is redacted, redact Facloc if it is not blank.

    e. If Facloc is redacted, redact Facname if it is not blank.

22. *Randomizing Row Order*: The MCI source file contained data sorted by column values, so after redactions the dataset could look like the illustration in Table 5 below.

Table 5.

|          | State    | Year     | Deathmon | Deathday |
|----------|----------|----------|----------|----------|
| Person 1 | 1        | 2018     | 1        | 5        |
| Person 2 | 1        | Redacted | 1        | 7        |
| Person 3 | 1        | 2018     | 1        | 12       |
| Person 4 | Redacted | 2018     | Redacted | 18       |
| Person 5 | 1        | 2018     | 1        | 30       |

23. If the sort order is maintained in Table 5, because Person 4 is situated between Person 3 and Person 5 and each of them are from State 1, it is known that Person 4 is from State 1 even though that cell had been redacted. Similarly, purely due to the sort order, one can deduce, despite redactions, that Person 2 died in 2018 and Person 4 had Deathmon=1. To prevent this, BJS randomized the order of rows after all redactions were applied.

## SUMMARY OF STEPS EMPLOYED

24. All steps taken to assess and redact the dataset were done in RStudio, an integrated development environment for the R programming language. The R programing language is designed for statistical computing, data analysis, statistical modeling, and data visualization. The k-anonymity algorithm used is part of sdcMicro[6] version 5.7.5. sdcMicro is a bundled collection of functions, data, and compiled code that can be loaded into RStudio to enable users to apply disclosure limitation techniques.[7]

25. The following list contains the steps taken to prepare the data:

(1) Load the Excel file containing MCI data into an R session using RStudio.

(2) Subset the data to contain records from the applicable years and months.

---

[6] See https://cran.r-project.org/web/packages/sdcMicro/index.html and https://sdcpractice.readthedocs.io/en/latest/sdcMicro.html.
[7] See https://sdctools.github.io/sdcMicro/articles/sdcMicro.html.

(3) Replace any cells with missing data to "Blank", to prepare for processing.

(4) Subset the data to keep columns that are part of the FOIA request, except for the direct identifiers, which are Lname, Fname, Mname, Dobmon, Dobday, and Dobyear.

(5) For each of the quasi-identifiers, redact any cell that is unique within its column.

(6) Enforce K-anonymity, with the following parameters specified:

    a. Quasi-identifiers: as listed above.

    b. k=2

    c. a=1

    d. Importance = NULL

(7) Apply redactions on associated columns, as described above.

(8) Add the fully redacted direct identifiers (Lname, Fname, Mname, Dobmon, Dobday, and Dobyear) and a column called FOIA_note that indicates "FOIA Exemptions (b)(6), (b)(7)(c)" for each row.

(9) Replace cells that were blanked during the redaction process with "Redacted."

(10) Replace cells that contain "Blank" to their original, empty, contents.

(11) Randomize the order of the rows.

(12) Output the data to an Excel file.

25. Exemption 6 of the FOIA concerns "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Because the information contained in the requested MCI data plainly constitutes personnel and medical files and similar files, Exemption 6 applies to records in the requested information that would constitute a clearly unwarranted invasion of personal privacy.

26. Exemption 7(C) of the FOIA protects information compiled for law enforcement purposes and exempts the disclosure personal information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Because the information contained in the requested MCI data concerns information compiled for law enforcement purposes (correctional institutions), Exemption 7(C) applies to records in the requested information that could reasonably be expected to constitute an unwarranted invasion of personal privacy.

27. The requested MCI information includes sensitive personal information about an individual's medical history, cause and manner of death, and criminal history. When this information can be linked to a particular individual, the disclosure of this information would constitute an unwarranted invasion of personal privacy. The personal information contained in the requested MCI records is not available in the public domain or otherwise easily accessible by the public. In applying the k-anonymity method to the requested MCI records, BJS endeavored to minimize the number of redactions necessary to protect against unwarranted invasions of personal privacy.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this  6th  day of March, 2024.

*Amy D Lauger*
_____
Amy Lauger