IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GANNETT SATELLITE INFORMATION NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 22-cv-475 (BAH) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF ITS SECOND <u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to LCvR 7(h)(1), Plaintiff hereby responds to Defendant's statement of material facts as to which there is no genuine issue:

1. On April 9, 2021, Plaintiff submitted a FOIA request to the Department of Justice's Office of Justice Programs ("OJP"), seeking:

"1. all information submitted to BJS under the Mortality in Correctional Institutions Program. This includes information contained in submissions of BJS forms CJ-9 and CJ-10 and any other data elements states are required to provide under 34 USC 60105, from 2010 through the date on which my request is processed. If this information is stored in a tabular database format, please provide a copy to me in tabular, sortable form sch as comma-separated values (CSV). If the information exists ONLY as a paper or PDF form submission, please provide PDF copies. To be clear, I am requesting data on the deaths of individual inmates, not the summaries of inmate deaths published on the BJS website.

2. a copy of any data dictionary, record layout or other documentation that describes elements contained in the electronic database requested above."

Declaration of Elizabeth Ann Carson ("Carson Decl.") ¶ 4.

**Response:** Undisputed

2. BJS personnel searched all databases that contained information submitted to the Mortality in Correctional Institutions program ("MCI"), including the databases for the CJ-9 (Death Report on Inmates Under Jail Jurisdiction), CJ-10 (Death Report on Inmates in Private and Multi-Jurisdictional Jails), and NPS-4A (State Prison Inmate Death Report) forms, and the personal folders of all MCI project managers and unit chiefs. Carson Decl. ¶ 6.

**Response:** Undisputed that BJS personnel searched all the specific databases referenced in this paragraph. Disputed that they searched all databases that contained information submitted to the MCI Program. Defendant's declarant claims to have only searched for data submitted by state and local governments, while the MCI Program also collected data from the federal Bureau of Prisons. *See* Carson Decl. ¶ 15; Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP)); Mortality in Correctional Institutions (MCI) (Formerly Deaths in Custody Reporting Program (DCRP)), Bureau of Justice Statistics (2019), https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program#0-0 ("MCI Webpage").

3. The search terms BJS personnel used were "2010-2019," "jail," "prison," and the individual form designations (e.g., "CJ-9" and "CJ-10," etc.). Carson Decl. ¶ 8.

**Response:** Undisputed.

4. BJS's search identified 236,568 pages of records that were potentially responsive. The page count represented the records requested if BJS were required to produce PDF files of each death requested. Carson Decl. ¶ 9.

**Response:** Undisputed that the search identified 236,568 pages of potentially responsive records. Disputed that the page count represented the records request if BJS were required to

produce PDF files of each death requested, since the total appears to exclude data collected from the federal Bureau of Prisons. *See* Carson Decl. ¶ 15.

5. The BJS official who conducted the search in 2021 managed the MCI collection from 2019 to 2023. Carson Decl. ¶ 1.

**Response:** Undisputed.

6. Based on her experience with BJS, her familiarity with the records maintained by BJS, discussions with knowledgeable staff, and her understanding of the scope of Plaintiff's FOIA request, that official determined that there were no other locations reasonably likely to contain responsive records. Carson Decl. ¶ 7.

**Response:** Undisputed that she made that determination. Disputed that that determination was correct. Defendant's declarant claims to have only searched for data submitted by state and local governments, while the MCI Program also collected data from the federal Bureau of Prisons. *See* Carson Decl. ¶ 15; MCI Webpage.

7. In April 2023, BJS produced the potentially responsive records in a "tabular database format" as requested by Plaintiff in the FOIA request, by running a software package written to select only the deaths of interest from the entire MCI dataset for both prisons and jails, to generate two Excel spreadsheets of all deaths in prisons and jails from 2010 to 2019. Carson Decl. ¶ 15.

**Response:** Undisputed.

8. The spreadsheets contain in tabular database format all of the data collected from state departments of corrections and local jail administrators on the MCI forms. Carson Decl. ¶ 15.

**Response:** Disputed. DOJ did not produce any data submitted while DCRA was not in effect or any data submitted by local governments. *See* Memorandum of Points and Authorities

in Support of Defendant's Second Motion for Summary Judgment and for Partial Reconsideration, 1, ECF No. 35-1.

9. BJS and OJP determined that the records located in response to Plaintiff's FOIA request contain research or statistical information identifiable to specific persons. Carson Decl. ¶ 10.

**Response:** Undisputed.

10. On April 13, 2021, OJP acknowledged receipt of the request, and informed Plaintiff that all of the records located by BJS in response to the FOIA request were subject to FOIA Exemption 3, 5 U.S.C. § 552(b)(3), under 34 U.S.C. § 10231, pertaining to research or statistical information collected by BJS that is required to be kept confidential. Carson Decl. ¶ 11; *see also* ECF 1-1 at 2.

**Response:** Undisputed that OJP acknowledged receipt of the request on April 13, 2021 and that it told Plaintiff that the records were subject to FOIA Exemption 3. To the extent this paragraph characterizes BJS's Exemption 3 assertion as correct, this is a legal conclusion to which no response is required. To the extent a response is required, it is disputed, as the Court has already ruled that Exemption 3 does not apply to the records. *See generally* Mem. Op., ECF No. 21.

11. Plaintiff appealed OJP's withholding decision to the Department of Justice's Office of Information Policy ("OIP") on April 14, 2021. Carson Decl. ¶ 12.

**Response:** Undisputed.

12. The Death in Custody Reporting Act of 2000 ("DCRA 2000"), Pub. L. 106-297, 114 Stat. 1045 (Oct. 13, 2000) expired in 2006. See H.R. Rep. No. 113-285, at 1-4 (2013); ECF 21 at 2.

**Response:** Undisputed.

13. BJS launched the MCI program following the passage of DCRA 2000. See Report of the Attorney General Pursuant to Section 6(e) of Executive Order 14074: Department of Justice Implementation of the Death in Custody Reporting Act of 2013, at 2 ("AG Report").[1]

**Response:** Undisputed.

14. After DCRA 2000 expired in 2006, BJS continued the MCI data collection on voluntary basis. AG Report at 2.

**Response:** Undisputed.

15. BJS collected MCI data directly from each of the nation's 50 state prison systems, and directly from approximately 2,800 local jail jurisdictions. BJS, MCI Program (Formerly Deaths in Custody Reporting Program (DCRP)).[2]

**Response:** Undisputed that BJS collected MCI data from these sources. Disputed that BJS collected data only from these sources. It also collected data from the federal Bureau of Prisons. *See* MCI Webpage.

16. DOJ determined that BJS was not the appropriate component to collect state information under DCRA 2013, because it determined that the additional enforcement and reporting compliance requirements under DCRA 2013 were incompatible with BJS's authorizing statute as a federal statistical agency. AG Report at 4.

**Response:** Undisputed.

---

[1] *Available at* https://bja.ojp.gov/doc/DOJ-Implementation-of-DCRA-of-2013.pdf (last accessed March 15, 2024).
[2] *Available at* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerlydeaths-custody-reporting-program (last accessed March 15, 2024).

17. DOJ established a new DCRA data collection under the Bureau of Justice Assistance ("BJA") to collect information pertaining to state and local correctional facilities under DCRA 2013. AG Report at 5.

**Response:** Undisputed.

18. BJA collects DCRA data only from the state agencies responsible for administering federal criminal-justice grants, and does not collect data directly from local jails. AG Report at 8.

**Response:** This paragraph states purported facts that are not material. BJA does not administer the MCI Program, which is the sole topic of the FOIA request at issue in this case. *See* Caruso Decl. Ex. 1.

19. BJS began collecting federal information under DCRA 2013 in fiscal year 2016. BJS, Federal Law Enforcement Agency Deaths in Custody Reporting Program ("FDCRP").[3]

**Response:** Undisputed that, in 2016, BJS began collecting data on federal agencies that DCRA 2013 required to be submitted.

20. BJS collects federal information under DCRA 2013 through the FDCRP. *Id*.

**Response:** Undisputed that BJS collects some federal information under DCRA 2013 through the FDCRP. Disputed that all death-in-custody data submitted by the federal Bureau of Prisons was collected through the FDCRP. At least some such data was collected through the MCI Program. *See* MCI Webpage.

21. The MCI program continued collecting data until the end of calendar year 2019, at which time it was discontinued. AG Report at 3-4.

**Response:** Undisputed.

---

[3] *Available at* https://bjs.ojp.gov/data-collection/federal-law-enforcement-agency-deaths-custodyreporting-program-fdcrp (last accessed March 15, 2024).

22. The MCI program was discontinued to prevent duplication with state reporting as required by DCRA 2013. AG Report at 3-4.

**Response:** Undisputed.

23. "K-anonymity" is one of several statistical disclosure avoidance methods that can be used to meet confidentiality standards for statistical datasets. Lauger Decl. ¶¶ 4-5.

**Response:** Undisputed.

24. The National Institute of Standards and Technology's "De-Identification of Personal Information" reference guide lists "k-anonymity" as a de-identification method. Lauger Decl. ¶¶ 4-6.

**Response:** Undisputed.

25. "K-anonymity" protects the privacy of person-specific, field structured data by ensuring that the information for each person contained in the release cannot be distinguished from at least k-1 individuals whose information also appears in the release. Lauger Decl. ¶ 6.

**Response:** Undisputed.

26. BJS redacted the full name and date of birth of each inmate in the records produced to Plaintiff. Lauger Decl. ¶ 25.

**Response:** Undisputed.

27. BJS applied "k-anonymity" to the records produced to Plaintiff to ensure that no individual record contained a unique combination of variables that BJS had identified as "quasi-indentifiers." Lauger Decl. ¶¶ 9, 10.

**Response:** Undisputed.

28. BJS identified the following variables quasi-identifiers: state of incarceration; month and day of death; name and location of correctional facility; and offense(s) of incarceration. Lauger Decl. ¶ 10.

**Response:** Undisputed.

29. Before applying the "k-anonymity" algorithm, BJS first redacted any value for a quasi-identifier that was unique within its column. Lauger Decl. ¶ 19.

**Response:** Undisputed.

30. BJS applied the "k-anonymity" algorithm using the "sdcMicro version 5.7.5" software package in the statistical software program "RStudio." Lauger Decl. ¶ 24.

**Response:** Undisputed.

31. After applying the "k-anonymity," algorithm redacted related columns as follows:

    a. If any of Race, Race1, Race2, Race3, Race4, Race5, Race6, Othrace, or Hispanic is redacted, redact all the others that are not blank. Thus, the additional redactions of race variables ensure that all relevant race information is eliminated, to protect the identity of the inmate.

    b. If cause is redacted, redact all of Illspec, Drugspec, Selfspec, Accspec, Suicspec, Homispec, Otherspec, Forcespec if they are not blank. Similarly, the additional redactions of cause of death ensure that all relevant cause of death is eliminated.

    c. If State is redacted redact Facname and Facloc if they are not blank.

    d. If Facname is redacted, redact Facloc if it is not blank.

    e. If Facloc is redacted, redact Facname if it is not blank.

Lauger Decl. ¶ 21.

**Response:** Undisputed.

32. After all redactions were applied, BJS randomized the order of the rows in the dataset before producing the records to Plaintiff. Lauger Decl. ¶ 23.

**Response:** Undisputed.

33. The unredacted dataset that Plaintiff seeks access to includes the following information about individual deceased inmates:

   a. First name, last name, and middle initial

   b. Month, day, and year of birth

   c. Month, day, and year of death

   d. Race and ethnicity

   e. Date of admission to the correctional facility

   f. Crime(s) of conviction

   g. Whether the inmate stayed overnight at a mental facility

   h. The inmate's place of death

   i. The location of the incident causing death (including in a segregation unit, and on- or off-site medical center, and an on- or off-site mental health center)

   j. The cause of death (with specific variables for causes including AIDS-related illness, accidental alcohol or drug intoxication, suicide, and homicide)

   k. Whether the inmate was evaluated by physical/medical staff

   l. Whether the inmate had diagnostic testing

   m. Whether the inmate received medications

   n. Whether the inmate received treatment other than medication

   o. Whether the inmate had surgery

   p. Whether the inmate was confined in a special medical unit.

Office of Justice Programs Freedom of Information Act Reading Room, BJS, Mortality in Correctional Institutions State Data - Codebook[4]

**Response:** Undisputed that the unredacted database contains this information. Disputed that it contains only this information. It also contains a "notes" column with a narrative description of the inmate's death. Caruso Decl. ¶ 27.

| | |
|---|---|
| Dated: April 19, 2024 | Respectfully submitted,<br><br>*/s/ Stephen Stich Match*<br>Matthew Topic, D.C. Bar No. IL0037<br>Stephen Stich Match, D.C. Bar No. MA0044<br>Merrick Wayne, D.C. Bar No. IL0058<br>LOEVY & LOEVY<br>311 N. Aberdeen, Third Floor<br>Chicago, IL 60607<br>Tel. (520) 488-0486<br>match@loevy.com<br>foia@loevy.com<br><br>*Attorneys for Plaintiff* |

---

[4] *Available at* https://www.ojp.gov/sites/g/files/xyckuh241/files/media/document/mciprisonscodebook20231026.xlsx (last accessed March 15, 2024)