IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GANNETT SATELLITE INFORMATION NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 22-cv-475 (BAH) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR 7(h)(1), Plaintiff hereby responds to Defendant's second statement of material facts as to which there is no genuine issue:

1. Defendant produced MCI data submitted by states for deaths occurring on or after October 1, 2015, to Plaintiff on October 26, 2023. Second Declaration of Amy Lauger ¶ 4.

    **Response:** Undisputed.

2. The MCI data produced to Plaintiff on October 26, 2023, did not include the notes column. *Id*.

    **Response:** Undisputed.

3. At the time, BJS had understood Plaintiff to have agreed to exclude the notes column from it request. *Id*.

    **Response:** Undisputed.

4. BJS subsequently re-processed the data produced to Plaintiff with the notes column included. *Id*. ¶ 5.

- 2 -

**Response:** Undisputed.

5. When it re-processed the data, BJS preserved the redactions that had been made in the previous production. *Id*. ¶ 6.

**Response:** Undisputed.

6. If the previously produced data were to have been entirely re-processed using the k-anonymity method with the notes column included and without preserving the previous redactions, some previously redacted information could have been left unredacted in the newly processed dataset. *Id*.

**Response:** Undisputed.

7. If Defendant had produced a new version of the dataset with different redactions to Plaintiff, Plaintiff would have been able to compare and contrast the two versions to reveal additional information, thereby defeating the purpose of the redactions for entries in the dataset with different redactions between the two versions. *Id*.

**Response:** Undisputed that Plaintiff would have been able to compare and contrast the two versions to reveal additional information. The statement that this would defeat the purpose of the redactions is a legal conclusion to which no response is required. To the extent a response is required, it is disputed. Defendant had a duty to produce all reasonably segregable information. *See* 5 U.S.C. 552(b). It cites no authority allowing it to bootstrap new redactions onto prior erroneous redactions.

8. When BJS re-processed the dataset with the notes column included, it treated the notes column as an additional quasi-identifier.

**Response:** Disputed. Defendant redacted the "Notes" column even though, like other columns reporting facts about inmate deaths, the "Notes" column likely contains blank cells. See

https://www.ojp.gov/program/ojp-freedom-information-act/ojp-reading-room. Since quasi-identifiers by definition contain information that identify an inmate, and blank cells by definition contain no information at all, Defendant cannot have treated the "Notes" column as a quasi-identifier. *See* First Lauger Decl. ¶ 9, ECF No. 35-4.

9. The statement on BJS's MCI webpage that BJS collected MCI data from the "Federal Bureau of Prisons" is a clerical error. Second Declaration of Elizabeth Ann Carson ¶ 5.

**Response:** Not material. As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program. *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F. To the extent a response is required, disputed. If the statement were a clerical error, one would expect Defendant to have corrected it. However, as of the date below, the statement remains on Defendant's website. *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1. Also disputed by the original statement itself.

10. BJS never collected MCI data from the Federal Bureau of Prisons. *Id*.

**Response:** Not material. As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program. *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F. To the extent a response is required, disputed. Defendant's website continues to say that BJS collected MCI data from the Federal Bureau of Prisons. *See* https://bjs.ojp.gov/data-

collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1.

11.     Until 2015, BJS collected annual aggregate counts of deaths (not individual-level data) from federal prisons. This collection of aggregate counts of deaths was not part of the MCI data collection. BJS publicly released the aggregated counts of deaths in federal prisons. See https://bjs.ojp.gov/library/publications/mortality-state-and-federal-prisons-2001-2019-statisticaltables. *Id*.

**Response:** Not material.  As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program. *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F.  To the extent a response is required, Plaintiff does not dispute that BJS collected aggregate deaths until 2015 or that it released aggregate counts of deaths.  Disputed that this collection was not part of the MCI data collection.  Defendant's website continues to say that BJS collected MCI data from the Federal Bureau of Prisons.  *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1.

12.     RTI, the data collection agent for the MCI program, never collected federal deaths-in- custody data for the MCI program. *Id*.

**Response:** Not material.  As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program. *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment,

§ II.F.  To the extent a response is required, disputed.  Defendant's website continues to say that BJS collected MCI data from the Federal Bureau of Prisons.  *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1.

  13. Federal data was not collected via the MCI data collection portal. *Id.*

  **Response:** Not material.  As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program.  *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F.  To the extent a response is required, disputed.  Defendant's website continues to say that BJS collected MCI data from the Federal Bureau of Prisons.  *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1.

  14. In fiscal year 2016, BJS created the Federal Deaths in Custody Reporting Program ("FDCRP") to collect deaths-in-custody data from federal law enforcement agencies. *Id.* ¶ 6.

  **Response:** Not material.  As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program.  *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F.  To the extent a response is required, undisputed.

  15. The FDCRP is distinct from the MCI program. *Id.*

  **Response:** Not material.  As argued in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, fairness precludes Defendant from arguing that federal Bureau of

Prisons Data is not responsive to Plaintiff's request for all information submitted to the MCI Program. *See* in Plaintiff's Reply in Support of Its Second Cross-Motion for Summary Judgment, § II.F.  To the extent a response is required, Plaintiff does not dispute that the FDCRP is distinct from the MCI Program, though Plaintiff does dispute the implicit suggestion that no data collected under the FDCRP was also collected under the MCI Program.  Defendant's website states that federal Bureau of Prisons data was collected under the MCI Program.  So to the extent it was also collected under FDCRP, it was collected under both.  *See* https://bjs.ojp.gov/data-collection/mortality-correctional-institutions-mci-formerly-deaths-custody-reporting-program; Second Caruso Decl. ¶ 5; Second Caruso Decl. Ex. 1.

16. BJS did not make non-public MCI data available to other DOJ offices and components for grant-making purposes. *Id*. ¶ 7.

**Response:** Undisputed.

Dated: June 28, 2024

Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
match@loevy.com
foia@loevy.com

*Attorneys for Plaintiff*